**BRIAN T. DUNN, ESQ. (SBN 176502)**
Email: bdunn@cochranfirm.com
**ANAHITA SEDAGHATFAR, ESQ. (SBN 217289)**
Email: asedaghatfar@cochranfirm.com
**THE COCHRAN FIRM CALIFORNIA**
4929 Wilshire Boulevard, Suite 1010
Los Angeles, California 90010
Telephone: (323) 435-8205
Facsimile:  (323) 282-5280

Attorneys for Plaintiff ADELENE SANDERS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADELENE SANDERS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SOUTHWEST AIRLINES CO., a business entity of unknown form; and DOES 1 through 100, inclusive,<br><br>Defendants. | **CASE NO.:** 2:21-CV-451<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **Violations of Civil Rights (42 U.S.C. § 1981)**<br><br>2. **Violations of Civil Rights (42 U.S.C. § 1983)**<br><br>3. **Violations of Civil Rights (42 U.S.C. § 2000(d)**<br><br>4. **Violation of Unruh Civil Rights Act (Cal. Civ. Code § 51, et seq.)**<br><br>5. **Negligence**<br><br>6. **Violation of California Business and Professions Code §17200, et seq.**<br><br>7. **Intentional Infliction of Emotional Distress**<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION AND VENUE

1. This Court has federal question subject matter jurisdiction under 28 U.S.C. §§1331 and 1333 for violations of the Civil Rights Act of 1991, 42 U.S.C. §§1981, 1983 and 42 U.S.C. §2000(d). This Court has jurisdiction under U.S.C. §1332 as this matter involves an amount in controversy exceeding $75,000.00 between citizens of different states. The court has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. §1367, as they form the same case and controversy as the federal claims and arise out of the same discriminatory events as Plaintiff's federal claims.

2. Venue is proper in the Central District of California under 28 U.S.C. §1391(b), as a substantial part of the events or omissions giving rise to these claims occurred in this district and Defendants are subject to this Court's personal jurisdiction.

## PARTIES

3. Plaintiff ADELENE SANDERS ("Plaintiff"), at all relevant times mentioned herein was, a resident of the County of San Bernardino and State of California, and a citizen of the United States.

4. Defendant SOUTHWEST AIRLINES CO. ("Southwest") at all relevant times mentioned herein, did and does business in the State of California, County of San Bernardino, and is an airline transportation company for passengers and cargo with its listed corporate headquarter in Dallas, Texas. Southwest has locations throughout the State of California and its agent for Service of Process in the State of California is The Prentice-Hall Corporation System, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 94583.

5. Plaintiff is unaware of the true names and capacities of those Defendants named herein as DOE Defendants. Plaintiff will amend this Complaint to allege said Defendants' true names and capacities when that information becomes known to her. Plaintiff is informed, believes, and thereon alleges that these DOE Defendants are legally responsible and liable for the incident, injuries, and damages hereinafter set forth, and that each of said Defendants proximately caused the injuries and damages by

reason of negligent, careless, deliberately indifferent, intentional, willful, or wanton misconduct, including the negligent, careless, deliberately indifferent, intentional, willful, or wanton misconduct in creating and otherwise causing the incidents, conditions, and circumstances hereinafter set forth, or by reason of direct or imputed negligence or vicarious fault or breach of duty arising out of the matters herein alleged. Plaintiff will seek leave to amend this Complaint to set forth said true names and identities of the unknown named DOE Defendants when they are ascertained.

6. Each of the individual Defendants sued herein is sued both in his individual and personal capacity, as well as in his/her official capacity.

7. Plaintiff is informed, believes, and thereon alleges, that at all times herein mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment, and/or conspiracy and with the permission and consent of other co-Defendants.

## FACTS COMMON TO ALL COUNTS

8. Plaintiff Adeline Sanders is African American. Plaintiff was a customer of Southwest who was racially profiled, harassed and subjected to intentional discrimination by Southwest and its employees.

9. Plaintiff and her aunt, also African American, had airline tickets to travel on Southwest on July 18, 2020 from Ontario, California to Las Vegas, Nevada, departing at 5:35 p.m. This was the last flight of the day from Ontario to Las Vegas. Plaintiff and her aunt intended to travel to Las Vegas for the weekend for a family reunion to which Plaintiff was very much looking forward.

10. The Southwest flight from Ontario, California to Las Vegas, Nevada is a short one, lasting only 45 minutes.

11. The racial profiling and discrimination at the hands of Southwest began almost immediately. Namely, Plaintiff arrived at the Southwest self-check-in station to retrieve her boarding pass and proceeded to the counter to check in her luggage. As she

3
COMPLAINT

was walking to the counter, Plaintiff observed two Caucasian female Southwest agents glaring at her and whispering to one another under their breath, making her feel very uncomfortable. As she got closer, Plaintiff overheard one of these agents say to the other, while smirking and in a mocking tone, "oh look she dropped her boarding pass." The agents then both began to giggle. Plaintiff, aware that they were talking about her, looked over her shoulder and realized indeed, she had dropped her boarding pass. Plaintiff felt humiliated and embarrassed by the conduct of these agents.

12. Once past TSA, Plaintiff and her aunt had some time to spare before the flight and decided to patronize one of the restaurants at the Southwest terminal for a meal. Upon completion of their meal, Plaintiff and her aunt walked towards their gate as their flight was now boarding. Plaintiff's aunt brought with her, in a "to go" cup from the restaurant, her iced water. It is notable that Plaintiff's aunt had on a face mask (due to COVID19 laws) with the words "Black Lives Matter" written on it.

13. Upon their arrival to the threshold of the aircraft entrance, Plaintiff and her aunt were abruptly confronted and stopped by two Caucasian female Southwest agents. One of the agents rudely asked what was in the cup. Plaintiff's aunt politely responded that her cup contained iced water. Plaintiff also confirmed that the cup contained iced water from the restaurant at which they just dined. The agent, with no basis whatsoever, accused Plaintiff and her aunt of lying and replied in an accusatory tone, and in the presence of numerous other passengers, "come on, I know what alcohol smells like!" The agent then demanded to "smell" the inside of the cup and proceeded to grab the cup out of her hand. The agent slid down her face mask, stuck her nose inside the cup, only to confirm the cup indeed contained water. The agent offered no apology and handed the cup back to Plaintiff's aunt. Plaintiff and her aunt were embarrassed, shocked and totally taken aback not only at being singled out, but at the fact that this agent actually put her nose inside the cup, which is wholly unsanitary to begin with, but could have proven deadly due to COVID19. The agents did not do the same to other Caucasian passengers also boarding the plane with beverages in their hands.

14. At this juncture, all Plaintiff wanted to do was get to Las Vegas to spend time with her family and put the embarrassment, harassment and discrimination behind her. Plaintiff and her aunt proceeded to board the plane and sat in the fourteenth row. The pilot began to announce the flight details when the same two Caucasian Southwest agents approached Plaintiff, stating there had been a "complaint" about her wardrobe. The alleged "complaint," as explained by the agents, was about Plaintiff's "sides." It is notable that there was nothing indecent or inappropriate about Plaintiff's attire that would justify the Southwest agents taking this action. Plaintiff, who is a curvy woman, physical features common to African American woman, was wearing a one-piece tie dye romper. Plaintiff's outfit presents and is affiliated with an urban style of dress. In fact, it now became even more abundantly clear that Plaintiff and her aunt were being targeted for no other reason than the color of their skin, being African American and for being supporters of the "Black Lives Matter" movement.

15. The agents asked Plaintiff if she had anything to "cover up [her] sides with." Plaintiff, now being intentionally targeted based on race for the third time, and wanting to avoid any issues, calmly advised them that she did not, as her bag was checked in. The agents stated again, "well there is a complaint made against you due to your sides." Plaintiff asked the agents if they could provide her with a blanket. The agents stated there were no blankets available. At this point, Plaintiff inquired as to what exactly was wrong with her attire and if Southwest had a wardrobe policy that she could review or which could be referenced, to which she received no response. The two agents continued to badger and demean Plaintiff about her attire, her "sides" and then about her "hips," which incidentally were not visible as Plaintiff was sitting in her seat. Once the agents became aware that another passenger was recording this incident on her cell phone, they immediately walked away.

16. Moments later Plaintiff was approached by a woman who identified herself as a Southwest supervisor named Dale. Dale stated that she was asked to address a "complaint" in reference to Plaintiff's wardrobe and her "sides." Dale then proceeded

to similarly badger Plaintiff, repeatedly asking if Plaintiff had anything to cover up with. Plaintiff advised Dale that she did not as her bag was checked in and that Plaintiff had advised the two agents of this already. Feeling increasingly humiliated and again being badgered, harassed and discriminated against for being African American, Plaintiff again inquired as to what Southwest policy she had violated. To no avail. At one point Plaintiff asked the passengers if anyone indeed had complained about her wardrobe. None of the passengers replied affirmatively.

17. Plaintiff and her aunt expressed that they were being harassed and targeted for being African American and because Plaintiff has physical features, curves, common to African American women. Plaintiff and her aunt mentioned their support of the "Black Lives Matter" movement and how the incident highlighted the importance of the movement and that they will be marching in the protests because of how Southwest was treating them.

18. More than once, Plaintiff and her aunt pointed out to the Southwest agents a Caucasian female passenger on the flight who had a very low-cut blouse on, with no bra on and with more than half her breasts exposed and asked why she was not being asked to "cover up." As this debacle was taking place in the presence of the other passengers, a gentleman kindly offered Plaintiff a T-shirt. Plaintiff accepted the shirt and was going to use it to cover up her legs and hips. Supervisor Dale then walked away only to return a few moments later stating that Plaintiff and her aunt needed to exit the aircraft.

19. Plaintiff and her aunt, demeaned, humiliated and shamed in clear view of other passengers, and for no other reason than the color of their skin, being African American and for vocally supporting "Black Lives Matter," calmly exited the plane where they were met by an officer standing near the gate with his hand on his firearm causing Plaintiff to feel threatened. At no point in time did the officer ask Plaintiff or her aunt any questions nor did he even speak to them.

20. Adding insult to injury, when Plaintiff and her aunt attempted to retrieve

their luggage, they were advised they would have to come back the next day to do so. It was not until Plaintiff insisted that they needed their luggage as their belongings were checked in, that the luggage was finally returned.

21. As this was the last flight out to Las Vegas, Plaintiff and her aunt were left with no choice but to leave the airport. Needless to say, the family reunion was ruined for Plaintiff.

22. Plaintiff did not violate any Southwest policy and engaged in no wrongdoing whatsoever. Despite this fact, she was continually and intentionally targeted, harassed and discriminated against due to her race.

23. But for Plaintiff being African American, she would not have been subjected to the incidents described above and deprived of the ability to travel on her contracted flight. Plaintiff was treated as a criminal, insulted and shamed at the hands of Southwest. Because of the illegal conduct of Southwest and its employees, Plaintiff experienced and continues to experience extreme emotional distress.

24. Systemic Racism is defined as "the complex array of antiblack practices, the unjustly gained political-economic power of whites, the continuing economic and other resource inequalities along racial lines, and the white racist ideologies and attitudes created to maintain and rationalize white privilege and power. Systemic here means that the core racist realities are manifested in each of society's major parts [...] each major part of U.S. society—the economy, politics, education, religion, the family—reflects the fundamental reality of systemic racism."[1]

25. On May 25, 2020, less than two months prior to the incidents set forth in this Complaint, George Floyd, a 46-year-old African American male died in Minneapolis, Minnesota at the hands of Derek Chauvin, a white police officer.

26. The video depicting the killing of Floyd went viral on social media and

---

[1] See excerpt from Joe Feagin's book, Racist America: Roots, Current Realities, and Future Reparations.  https://www.thoughtco.com/systemic-racism-3026565.

became a driving force for protests in Minneapolis, Minnesota and throughout the world, many of which were spearheaded by the "Black Lives Matter" movement and its activists. California was a major center of protests in response to this systemic racism, as not only urban areas like Oakland, San Francisco, and Los Angeles had protests, but many suburban communities as well voiced their displeasure at systemic racism suffered by African Americans.

27. In large part due to the protests sparked by the tragic death of Floyd, the "Black Lives Matter" movement gained traction and became internationally recognized as a movement dedicated to fighting racism against African Americans and demanding that society value the lives and humanity of African Americans as much as it values the lives and humanity of Caucasians.

28. Plaintiff contends that Southwest, through its agents, intentionally discriminated against Plaintiff by removing her and her aunt from the aircraft on the basis of Plaintiff's race and prevented her from enforcing their contract in violation of 42 U.S.C. §1981.

29. Defendant's intentional discrimination against Plaintiff resulted in Plaintiff being denied equal rights and benefits, Plaintiff's exclusion, denial of freedom and equality, intentional infliction of emotional distress, unbearable humiliation, mental anguish, and unjust treatment.

### FIRST CAUSE OF ACTION
### (Against Defendants for Denial of Equal Rights Under The Law [42 U.S.C. §1981])

30. Plaintiff restates and incorporates by reference the foregoing paragraphs of this Complaint as if set forth in full at this point.

31. Plaintiff who is African American, is a member of a racial minority. At all times relevant hereto, Plaintiff had the same civil right to be treated equally in making and enforcing contracts as white citizens, pursuant to 42 U.S.C. § 1981.

32. At all material times, Southwest was an air carrier engaged in commercial air transportation services and at all material times Plaintiff was a passenger

on Southwest's airline, wherein Southwest denied Plaintiff, an African American the right to make and enjoy a contract with Southwest on the same terms that it makes and follows contracts with white people.

33. During the passage of commercial air transportation, Plaintiff was entitled to travel and be free from discrimination in her travel, and to have nondiscriminatory passage and not be treated differently from other passengers when they travelled on commercial air carriage by Southwest.

34. Plaintiff was further entitled to the bargained for performance of her contract by contracting party Southwest and as such was entitled to carriage on her flight, free from discrimination.

35. Southwest is liable for the unlawful acts of its agents and employees, both directly and under the doctrine of respondeat superior, as the discriminatory actions of its agents and employees, were ratified by Southwest.

36. Southwest engaged in racially motivated acts of intentional and purposeful discrimination when it removed Plaintiff from her flight due to Plaintiff's race.

37. Plaintiff's removal from her flight was the product of intentional racial discrimination by Southwest, and not on a rational determination inimical to safety, and denied Plaintiff the right to make and enjoy a contract with Southwest on the same terms that it makes and follows contracts with white people.

38. Without lawful justification, privilege or immunity, and acting in an arbitrary and capricious and intentional manner, Southwest wrongfully removed Plaintiff from her flight when there was no basis for such removal other than intentional discrimination.

39. By deplaning Plaintiff in front of other passengers, Southwest intentionally caused Plaintiff to feel "singled out," "targeted," and "profiled" because of her race.

40. But for her race, Plaintiff would not have been asked to leave the plane.

41. The discriminatory actions of Southwest, described herein above, proximately caused Plaintiff's damages in the form of delay, embarrassment, humiliation, mortification, fright, shock, mental anguish, emotional distress, denial of social pleasures and enjoyment, and damage to Plaintiff's reputation.

42. Southwest acted willfully, maliciously, knowingly, with reckless disregard and callous indifference to the known consequences of its acts and omissions, and purposefully with the intent to deprive Plaintiff of her rights and privileges, and did in fact violate the aforementioned rights and privileges, thereby warranting punitive and exemplary damages against the Southwest in an amount to be proven at the trial of this matter.

43. Plaintiff is entitled to and hereby demand costs, attorneys' fees, and expenses pursuant to 42 U.S.C. §1988.

## SECOND CAUSE OF ACTION

### (Against Defendants for Violations of Civil Rights [42 U.S.C. §1983])

### (Racial Discrimination Under Color of State Law)

44. Plaintiff restates and incorporates by reference the foregoing paragraphs of this Complaint as if set forth in full at this point.

45. Southwest acted under color of state law, violated Plaintiff's rights, deprived Plaintiff of her Constitutional rights against discrimination.

46. Race was the determinative factor for the removal of Plaintiff as there were no actions by Plaintiff that were inimical to safety.

47. The discriminatory actions of Southwest, described herein above, proximately caused Plaintiff's damages in the form of delay, embarrassment, humiliation, mortification, fright, shock, mental anguish, emotional distress, denial of social pleasures and enjoyment, and damage to Plaintiff's reputation.

48. Southwest acted willfully, maliciously, knowingly, with reckless disregard and callous indifference to the known consequences of its acts and omissions, and purposefully with the intent to deprive Plaintiff of her rights and privileges, and did

in fact violate the aforementioned rights and privileges, thereby warranting punitive and exemplary damages against the Southwest in an amount to be proven at the trial of this matter.

49. Plaintiff is entitled to and hereby demand costs, attorneys' fees, and expenses pursuant to 42 U.S.C. §1988.

## THIRD CAUSE OF ACTION

### (Against Defendants for Denial of Equal Rights Under The Law)

### [42 U.S.C. § 2000(d)]

50. Plaintiff restates and incorporates by reference the foregoing paragraphs of this Complaint as if set forth in full at this point.

51. At all times relevant hereto, Plaintiff had the right to participate and enjoy the benefits of federally assisted programs and not be excluded or discriminated against based on race, color, or national origin pursuant to 42 U.S. C. § 2000(d).

52. At all times relevant hereto, Southwest was and is a commercial air carrier receiving federal assistance as it operates according to the rules and regulations of the Federal Aviation Agency and the Department of Transportation, Department of Homeland security, and works in compliance with various other federal agencies. Southwest also receives federal funds via federal subsidies and therefore is subject to 42 U.S.C. § 2000(d). Southwest through and by the actions of its agents and employees violated 42 U.S.C. § 2000(d) when it deprived Plaintiff the participation and benefits of this program.

53. The discriminatory actions of Southwest, described herein above, proximately caused Plaintiff's damages in the form of delay, embarrassment, humiliation, mortification, fright, shock, mental anguish, emotional distress, denial of social pleasures and enjoyment, and damage to Plaintiff's reputation.

54. Southwest acted willfully, maliciously, knowingly, with reckless disregard and callous indifference to the known consequences of its acts and omissions, and purposefully with the intent to deprive Plaintiff of her rights and privileges, and did

in fact violate the aforementioned rights and privileges, thereby warranting punitive and exemplary damages against the Southwest in an amount to be proven at the trial of this matter.

## FOURTH CAUSE OF ACTION

### (Against Defendants for Violation of Unruh/Tom Bane Civil Rights Acts [Cal. Civ. Code § 51, et seq.])

55. Plaintiff restates and incorporates by reference the foregoing paragraphs of this Complaint as if set forth in full at this point.

56. Southwest denied, aided or incited a denial of full and equal accommodations, advantages, privileges and services to Plaintiff.

57. A substantial motivating reason for Southwest's conduct was Plaintiff's race.

58. The discriminatory actions of Southwest, described herein above, proximately caused Plaintiff's damages and was a substantial factor in causing same, in the form of delay, embarrassment, humiliation, mortification, fright, shock, mental anguish, emotional distress, denial of social pleasures and enjoyment, and damage to Plaintiff's reputation.

59. Southwest acted willfully, maliciously, knowingly, with reckless disregard and callous indifference to the known consequences of its acts and omissions, and purposefully with the intent to deprive Plaintiff of her rights and privileges, and did in fact violate the aforementioned rights and privileges, thereby warranting punitive and exemplary damages against the Southwest in an amount to be proven at the trial of this matter.

## FIFTH CAUSE OF ACTION

### (Against Defendants for Negligence)

60. Plaintiff restates and incorporates by reference the foregoing paragraphs of this Complaint as if set forth in full at this point.

61. Southwest is a commercial airline in the business of providing air

transportation to passengers and as such, is a common carrier bound by a heightened duty of care to its passengers. Plaintiff was equally owed this duty of care as a paying, ticketed, and seated passenger of Southwest.

62. Southwest racially discriminated against Plaintiff and acted negligently, breaching its duty of care to Plaintiff by failing to act reasonably in providing a safe travel environment free from hostility and racial discrimination; failing to act with the highest care and vigilance of a cautious person in providing a safe travel environment free from hostility and racial discrimination; failing to honor contractual relationships; and failing reasonably avoid harm to passengers.

63. The actions of Southwest, described herein above, proximately caused Plaintiff's damages and was a substantial factor in causing same, in the form of delay, embarrassment, humiliation, mortification, fright, shock, mental anguish, emotional distress, denial of social pleasures and enjoyment, and damage to Plaintiff's reputation.

## SIXTH CAUSE OF ACTION

### (Against Defendants for Violation Of Business & Professions Code § 117200, et seq.)

64. Plaintiff restates and incorporates by reference the foregoing paragraphs of this Complaint as if set forth in full at this point.

65. Plaintiff bring this action on her own behalf, on behalf of other members of the public similarly situated.

66. Southwest has engaged in, and Plaintiff is informed, believes and thereon alleges that Southwest continues to engage in, a pattern and practice of unlawful discrimination and retaliation in direct violation of Plaintiff's civil rights and other laws cited herein.

67. Therefore, Southwest has engaged in unlawful, unfair and/or fraudulent conduct within the meaning of California Business & Professions Code § 17200, et. seq. entitling Plaintiff to an order requiring Southwest to pay restitution for moneys wrongfully obtained through its illegal business practices and to injunctive relief barring

1. Southwest's above-described unfair, unlawful and/or fraudulent practices.

68. Under California law, virtually any law, federal, state or local can serve as a predicate for an action under Business and Professions Code § 17200. Section 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under the unfair competition law. (See Smith v. State Farm Mutual Automobile Insurance Co., et. a1., 93 Cal.App.4th 700 (2001).)

69. Injunctive relief and/or restitution is the remedy authorized for violation of Section 17200. "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition ... or as may be necessary to restore to any person in interest any money ... which may have been acquired by means of such unfair competition." (See Business and Professions Code § 17203).

## SEVENTH CAUSE OF ACTION
### (Against Defendants for Intentional Infliction of Emotional Distress)

70. Plaintiff restates and incorporates by reference the foregoing paragraphs of this Complaint as if set forth in full at this point.

71. Southwest engaged in offensive, deliberate and intentional acts of misconduct, humiliation, harassment and discrimination against Plaintiff and knew that said conduct would cause or was likely to cause Plaintiff severe emotional distress.

72. The aforesaid conduct of Southwest was willful, intentional, wanton, malicious, oppressive, and despicable, and done with a conscious disregard of Plaintiff's rights and for the purpose of deliberately causing Plaintiff to suffer humiliation, mental anguish, emotional distress, as well as pecuniary loss and financial devastation.

73. Southwest was aware that Plaintiff was particularly sensitive to said conduct, and that its conduct would cause or was likely to cause Plaintiff emotional distress. Plaintiff is therefore entitled to punitive damages against Southwest in an

amount appropriate to punish or set an example of Southwest.

74. As a proximate result of the aforementioned acts, Plaintiff suffered emotional distress, including but not limited to humiliation, embarrassment and mental anguish, all to her general damage and in an amount to be determined according to proof.

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

1. For general and special damages according to proof;
2. For all damages sustained as a result of Defendant's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;
3. For penalties and reasonable attorney's fees as provided by law;
4. For exemplary and punitive damages;
5. For costs of suit incurred herein;
6. For prejudgment and post judgment interest, as provided by law;
7. For restitution;
8. For injunctive relief;
9. For such other and further or different relief as the Court may deem necessary, just, and proper;

///
///
///
///
///
///

## JURY DEMAND

Plaintiff hereby demands that a jury be impaneled for the trial of this matter.

Respectfully submitted,

DATED: January 14, 2021        **THE COCHRAN FIRM CALIFORNIA**

By: /s/ ANAHITA SEDAGHATFAR
BRIAN T. DUNN
ANAHITA SEDAGHATFAR
Attorneys for Plaintiff ADELENE SANDERS