Richard A. Lazenby (State Bar No.: 202105)
Email: rlazenby@victorrane.com
Natasha Mikha Pardasani (State Bar No.: 270731)
Email: npardasani@victorrane.com
Nicole A. Poltash (State Bar No. 323420)
Email: npoltash@victorrane.com
VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849
Facsimile: (310) 388-4869

Attorneys for Defendants
SOUTHWEST AIRLINES CO.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADELENE SANDERS, an individual,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>SOUTHWEST AIRLINES CO., a business entity of unknown form; and DOES 1 through 100, inclusive,<br><br>　　　　　Defendants. | Case No.: 2:21-CV-00451-DDP-MRW<br><br>**DECLARATION OF DEBORAH CARROLL IN SUPPORT OF SOUTHWEST AIRLINES CO.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT** |

　　　　I, Deborah Carroll, declare as follows:

　　　　1.　　I am employed as a Senior Analyst and Advanced Certified Paralegal with the Customer Claims & Insurance – Treasury Department for defendant Southwest Airlines Co. (hereinafter, "Southwest") in the above-referenced matter. In my capacity as a Senior Analyst and Certified Paralegal, my job duties include coordinating with other Southwest departments to search for and obtain Southwest records in response to litigation. I have been employed by Southwest since 2014. I have been authorized to submit this declaration on behalf of Southwest. I have personal knowledge of the facts set forth in this declaration and, if called as a

witness, I would testify competently to such facts under oath.

2. In connection with the above lawsuit, Southwest employees caused searches to be conducted to produce the following documents:

    a. The passenger name records ("PNRs") for Plaintiff Adelene Sanders ("Plaintiff) and Shelly Phillips ("Phillips") relating to their reservations for travel on flight no. 577 from Ontario, California to Las Vegas, Nevada on July 18, 2020 ("the subject flight");

    b. The PNRs for 20 passengers who traveled on the subject flight;

    c. The passenger manifest for the subject flight;

    d. Southwest's Contract of Carriage in effect on July 18, 2020;

    e. Excerpts of Southwest's policies and procedures for ground operations employees and flight attendants that were in effect on July 18, 2020; and

    f. The reports completed by Southwest employees pertaining to Plaintiff and the subject flight.

3. Attached hereto as Exhibit 4 is a true and correct copy of the PNR for Plaintiff relating to her reservation for travel on the subject flight. Attached hereto as Exhibit 5 is a true and correct copy of the PNR for Phillips relating to her reservation for travel on the subject flight. Southwest's PNRs are generated and maintained in electronic form and comprise a record of each passenger's travel reservation, ticketing, check-in, transactions, communications, and other flight-related information for that passenger. The PNRs in Exhibits 4 and 5 have been regularly and continuously maintained in Southwest's electronic records in accordance with the normal course and scope of Southwest's business since they were created.

4. Southwest passenger PNRs contain a section called "Boarding Activity," which tracks the date and time of significant activities relating to the passenger's ticket, including when the ticket is purchased and when a passenger

checks in at the gate. The Boarding Activity section is reflected on the first page of Plaintiff's PNR in Exhibit 4. The first three entries in Plaintiff's Boarding Activity relate to the purchase of Plaintiff's ticket for the subject flight and her online check-in. The fourth entry in Plaintiff's Boarding Activity, with a time stamp of 5:15pm on July 18, 2020, reflects the time that Plaintiff's boarding pass was scanned at the aircraft gate. With respect to Phillips, the Boarding Activity section is reflected on the first page of her PNR in Exhibit 5. The first three entries in Phillips' Boarding Activity relate to the purchase of Phillips' ticket for the subject flight and her online check-in. The fourth entry in Phillips' Boarding Activity, with a time stamp of 5:16pm on July 18, 2020, reflects the time that Phillips' boarding pass was scanned at the aircraft gate.

5.  Southwest passenger PNRs also contain sections documenting payment for the passengers' travel. These sections include those titled "PNR Payment," "PNR Ticketing Status," and "Forms of Payment." With respect to Plaintiff's PNR in Exhibit 4, the PNR Payment section reflects a payment of $48.98 for the ticket. The PNR Ticketing Status section reflects that the ticket was refunded. The Forms of Payment section provides the last four digits of the credit card used to purchase Plaintiff's ticket for the subject flight and provides that Plaintiff's ticket was refunded. With respect to Phillips' PNR in Exhibit 5, the PNR Payment section reflects a payment of $48.98 for the ticket. The PNR Ticketing Status section reflects that the ticket was refunded. The Forms of Payment section provides the same last four digits of the credit card used to purchase Phillips' ticket as that used to purchase Plaintiff's ticket for the subject flight. The Forms of Payment section also provides that Phillips' ticket was refunded.

6.  Southwest pulled PNRs for certain passengers on the subject flight according to the following criteria: (1) all women over the age of 18; and (2) all men between the ages of 18 and 40. Of the 35 passengers who reserved travel on the subject flight, 20 passengers met these criteria. The PNRs for these 20

passengers include the contact information that was provided to Southwest when the travel was reserved for each passenger. The PNRs for the 20 passengers have been regularly and continuously maintained in Southwest's electronic records in accordance with the normal course and scope of Southwest's business since they were created.

7. Attached hereto as Exhibit 6 is a true and correct copy of the passenger manifest for the subject flight as it was produced to Plaintiff in this litigation. The manifest in Exhibit 6 is a true and correct copy of the manifest maintained in Southwest's electronic records, except that certain passenger names have been redacted. The redacted names reflect the 15 passengers for whom Southwest did not provide PNRs to Plaintiff (all passengers under the age of 18, and male passengers over the age of 40). Passenger manifests are generated and maintained in electronic form and comprise a record of each of the passengers who are ticketed for travel on a particular flight. The passenger manifest in Exhibit 6 has been regularly and continuously maintained in Southwest's electronic records in accordance with the normal course and scope of Southwest's business since it was created.

8. The passenger manifest includes columns titled "pax code" and "actv ts lcl," which reflect the status of the passengers' travel on the subject flight. For instance, the first three passengers on the manifest are listed as "Pax Un-check" in the "pax code" column, which means these passengers tickets were canceled. In the "actv ts lcl" column, the date and time reflects the time that these passengers' tickets were canceled. For the next 30 passengers on the manifest, the "pax code" column reflects "Gate On," which is a reference to their check-in at the aircraft gate. For these 30 passengers, the date and time in the "actv ts lcl" column reflects the time that each passenger's boarding pass was scanned at the gate as they boarded the aircraft. The "pax code" column for the final two passengers listed on the manifest, Plaintiff and Phillips, reflects "Pax Un-check," which means their

tickets were canceled. In the "actv ts lcl" column, the date and time reflects the time that Plaintiff and Phillips' tickets were canceled. As the "actv ts lcl" column has been sorted chronologically, the manifest reflects that the tickets for the first three listed passengers were canceled before boarding began at the airport gate. The next 30 passengers are listed in the manifest in the order that their boarding passes were scanned to board the aircraft. The final two listed passengers, Plaintiff and Phillips, had their tickets canceled at the gate, after boarding was completed.

9. Attached hereto as Exhibit 7 is a true and correct copy of Southwest's Contract of Carriage that was in effect on July 18, 2020. Southwest's Contract of Carriage is maintained in electronic form and updated from time to time. Historic versions of the Contract of Carriage are also maintained in electronic form, so that when changes have been made, Southwest can still access the version that was in effect on a prior date. The Contract of Carriage in Exhibit 7 has been regularly and continuously maintained in Southwest's electronic records in accordance with the normal course and scope of Southwest's business since it was created.

10. Attached hereto as Exhibit 8 is a true and correct copy of excerpts of Southwest's policies and procedures for ground operations employees that were in effect on July 18, 2020. Southwest's written policies and procedures are maintained in electronic form and updated from time to time. Historic versions of Southwest's policies and procedures are also maintained in electronic form, so that when changes have been made, Southwest can still access the version that was in effect on a prior date. The policies and procedures in Exhibit 8 have been regularly and continuously maintained in Southwest's electronic records in accordance with the normal course and scope of Southwest's business since they were created.

11. Attached hereto as Exhibit 9 is a true and correct copy of excerpts of Southwest's policies and procedures for flight attendants that were in effect on July 18, 2020. Southwest's written policies and procedures are maintained in electronic form and updated from time to time. Historic versions of Southwest's policies and

1 procedures are also maintained in electronic form, so that when changes have been made, Southwest can still access the version that was in effect on a prior date. The policies and procedures in Exhibit 9 have been regularly and continuously maintained in Southwest's electronic records in accordance with the normal course and scope of Southwest's business since they were created.

12. Attached hereto as Exhibit 10 is a true and correct copy of excerpts of Southwest's policies and procedures for flight operations that were in effect on July 18, 2020. Southwest's written policies and procedures are maintained in electronic form and updated from time to time. Historic versions of Southwest's policies and procedures are also maintained in electronic form, so that when changes have been made, Southwest can still access the version that was in effect on a prior date. The policies and procedures in Exhibit 10 have been regularly and continuously maintained in Southwest's electronic records in accordance with the normal course and scope of Southwest's business since they were created.

13. Southwest flight attendants perform duties pursuant to a flight attendant manual, and Southwest employees who check passenger baggage perform duties pursuant to a ground operations manual. The positions are not interchangeable. Flight attendant job duties do not include checking passenger bags at the baggage-drop counter of airports. Baggage agent job duties do not include boarding Southwest aircraft to greet passengers or address passenger issues.

14. None of the flight attendants from the subject flight – Elena "Ellie" Karenev, Phyllis "Lily" Benedict, or Chante Andrus – worked at the Southwest check-in counter at Ontario Airport on July 18, 2020.

15. Pursuant to Southwest's records and search for reports relating to Plaintiff and the subject flight, there were seven Southwest employees who encountered Plaintiff on July 18, 2020: Flight Attendants Elena Karenev, Phyllis Benedict and Chante Andrus; Captain Alex Meifert; First Officer Justin Moyer; and Customer Service Supervisors Dell Jackson and Justin Thomas.

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

16. Reports submitted by Southwest employees are created and maintained in electronic form. Attached hereto as Exhibit 11 is a true and correct copy of the report submitted by Captain Alex Meifert. Attached hereto as Exhibit 12 is a true and correct copy of the report submitted by Customer Service Supervisor Justin Thomas. Attached hereto as Exhibit 13 is a true and correct copy of the report submitted by Flight Attendant Phyllis "Lily" Benedict. Attached hereto as Exhibit 14 is a true and correct copy of the report submitted by Flight Attendant Elena "Ellie" Karenev. The reports in Exhibits 11, 12, 13, and 14 have been regularly and continuously maintained in Southwest's electronic records in accordance with the normal course and scope of Southwest's business since they were created.

17. Southwest conducted a search of passenger and employee racial discrimination complaints that were made in the ten years prior to the subject flight against the seven Southwest employees who encountered Plaintiff on July 18, 2020. Written complaints against Southwest employees are regularly and continuously maintained in Southwest's electronic records in accordance with the normal course and scope of Southwest's business. None of the seven employees had any racial discrimination complaints made against them by any customers or employees in the ten years prior to July 18, 2020.

18. Apart from Plaintiff, Southwest has received no complaints of discrimination from any passengers on the subject flight.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 8th day of August 2022, in New York, New York.

_Deborah Carroll_
DEBORAH CARROLL