Richard A. Lazenby (State Bar No.: 202105)
Email: rlazenby@victorrane.com
Natasha Mikha Pardasani (State Bar No.: 270731)
Email: npardasani@victorrane.com
Nicole A. Poltash (State Bar No. 323420)
Email: npoltash@victorrane.com
VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849
Facsimile: (310) 388-4869

Attorneys for Defendants
SOUTHWEST AIRLINES CO.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADELENE SANDERS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SOUTHWEST AIRLINES CO., a business entity of unknown form; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 2:21-CV-00451-DDP-MRW<br><br>**SOUTHWEST AIRLINES CO.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date: Sept. 12, 2022<br>Hearing Time: 10:00 a.m.<br>Judge: Dean D. Pregerson<br>Courtroom: 9C<br><br>[Filed concurrently with: Reply re Separate Statement; Declaration of Nicole A. Poltash; Declaration of Jacqueline D. DeWarr; Declaration of Michelle Buckley; Declaration of Sarah Vandermark; Reply to Plaintiff's Evidentiary Objections; Request for Evidentiary Ruling |

Defendant Southwest Airlines Co. (hereinafter, "Southwest"), by and through its attorneys of record at Victor Rane, hereby submits its Reply in Support of its Motion for Summary Judgment or, in the alternative, for Partial Summary Judgment against Plaintiff Adelene Sanders (hereinafter, "Plaintiff") in this action as follow

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... iii-iv

I.   INTRODUCTION ......................................................................... 1

II.  PLAINTIFF'S OPPOSITION ALLEGES NEW EVIDENCE AND THEORY OF LIABILITY THAT SHOULD BE DISREGARDED ............... 2

    A. New Evidence Regarding Non-Black Passengers Boarding with Beverages Should be Disregarded .................................................. 3

    B. New Evidence Regarding Non-Black and Other Caucasian Passengers with "Revealing Attire" Should be Disregarded ........... 3

    C. Even if the Court Accepted Plaintiff's New Evidence and Theory of Liability, the Evidence is Not Substantial or Specific Enough to Infer Racism ............................................................................ 4

III. PLAINTIFF'S NUMEROUS MISREPRESENTATIONS OF FACTS SHOULD BE DISREGARDED .................................................... 6

    A. Check-in Counter ................................................................ 6

    B. Ms. Phillips' To-Go Beverage ............................................ 7

    C. Plaintiff's Inappropriate Attire ........................................... 8

    D. Removal from the Aircraft .................................................. 10

    E. Southwest Policies and Training ........................................ 14

IV.  PLAINTIFF CANNOT ESTABLISH INTENTIONAL RACIAL DISCRIMINATION BECAUSE HER ENTIRE CASE CONSISTS OF UNCORROBORATED, INSUBSTANTIAL, AND NON-SPECIFIC EVIDENCE ............................................................................... 15

    A. Plaintiff Has Not Met Her Burden Under *McDonnell Douglas* .... 17

        1. *Plaintiff Does Not Have Direct Evidence of Discrimination* ................................................................ 17

        2. *Plaintiff Lacks Circumstantial Evidence of Racism* ....... 19

            a. *Plaintiff's Other Alleged Complaints of Discrimination Do Not Reasonably Infer Intentional Racial Discrimination Here* ................. 19

            b. *Southwest Does Not Lack Policies or Training Against Discrimination* ........................................... 21

            c. *Southwest Did not Fail to Comply with its Policies* ........................................................... 21

d. *Plaintiff Fails To Demonstrate that Southwest's Proffered Explanations are Unworthy of Credence* ............................................... 22

B. Even if the Court Were to Consider the Motivating Factor Analysis, Plaintiff Has Failed to Meet Her Burden ...................... 24

V.   PLAINTIFF FAILS TO ESTABLISH WHY HER REMAINING CAUSES OF ACTION SHOULD NOT BE DISMISSED ........................... 24

VI.   CONCLUSION ........................................................................................ 25

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

# TABLE OF AUTHORITIES

**Federal Cases**

*AJ Reyes v. Educ. Credit Mgmt. Corp.*,
2016 U.S. Dist. LEXIS 66821, 2016 WL 2944294 (S.D. Cal. May 19, 2016) ....................... 2

*Aragon v. Republic Silver State Disposal*,
292 F.3d 654 (9th Cir. 2002) .................................................... 6, 17

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000) ................................................... 2

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
140 S. Ct. 1009 (2020) ........................................................ 16

*Estes v. Dick Smith Ford, Inc.*,
856 F.2d 1097 (1988) ......................................................... 20

*Fobbs v. Holy Cross Health Sys. Corp.*,
29 F.3d 1439 (9th Cir. 1994) .................................................. 24

*Gross v. FBL Financial Services, Inc.*,
557 U. S. 167 (2009) ......................................................... 16

*Heyne v. Caruso*,
69 F.3d 1475 (9th Cir. 1995) .................................................. 20

*Karrani v. JetBlue Airways Corp.*,
825 F. App'x 535 (9th Cir. 2020) ............................................. 11

*Lindsey v. SLT L.A., LLC*,
447 F.3d 1138 (9th Cir. 2006) ........................................... 15, 17, 24

*Nat'l Ass'n of African Am.-Owned Media v. Charter Communs., Inc.*,
915 F.3d 617 (9th Cir. 2019) .................................................. 16

*Pickern v. Pier 1 Imports*
(U.S.), Inc., 457 F.3d 963 (9th Cir. 2006) ..................................... 2

*Rodriguez v. IBM*,
960 F. Supp. 227 (N.D. Cal. 1997) ........................................... 22

*Russell v. Rolfs*,
893 F.2d 1033 (9th Cir. 1990) .............................................. 2, 3

*Saif'Ullah v. Cruzen*,
2017 U.S. Dist. LEXIS 177873 (N.D. Cal. Oct. 26, 2017) ....................... 2

*Shamburger v. Roy*,
50 F.3d 16 (9th Cir. 1995) ................................................... 2

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
570 U.S. 338 (2013) ..................................................... 15-16, 16

*Van Asdale v. Int'l Game Tech.*,
577 F.3d 989 (9th Cir. 2009) ................................................. 2

Victor Rane
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) ............................................................... 6

*Yeager v. Bowlin*,
   693 F.3d 1076 (9th Cir. 2012) ............................................................... 2

**Federal Statutes**

49 U.S.C. § 44902 ...................................................................... 13, 24

**Other**

Fed. R. Civ. P. 37 ...................................................................... 2, 21, 25

Victor Rane
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION

Plaintiff's Opposition resorts to shifting her theory of discrimination with claims and evidence never before alleged or produced. Her Brief is also replete with gross misrepresentations of facts, and even patently false claims. These tactics are telling, sapping the strength out of any belief that her original claims and evidence ever passed muster. The Court should reject these tactics. And even if this purported new evidence and claims were considered, Plaintiff's case still fails to demonstrate her high burden of but-for causation under *Comcast*, or the quality and quantum of evidence required under the *McDonnell Douglas* framework.

## II.   PLAINTIFF'S OPPOSITION ALLEGES NEW EVIDENCE AND THEORY OF LIABILITY THAT SHOULD BE DISREGARDED

The lack of direct or circumstantial evidence supporting Plaintiff's claim of racial discrimination is so apparent, that she shifted her theory of liability, for the first time, in her Opposition to Southwest's Motion for Summary Judgment. In Plaintiff's Complaint, discovery responses, disclosures, and deposition testimony, Plaintiff consistently asserted that she was treated differently from: (1) *only Caucasian* passengers who boarded the aircraft with beverages in hand; and (2) a *single* female *Caucasian* passenger wearing a white, sheer, see-through blouse. Now, when presented with Southwest's Motion for Summary Judgment ("Motion"), and over two months after the close of fact discovery, Plaintiff expands the class of alleged similarly situated passengers to the broadest class of persons different from her: "non-Black."  She now alleges that she observed *non-Black* passengers who boarded with beverages, and *numerous* unidentified Caucasian *and* non-Black passengers who were dressed inappropriately.

This new theory of liability is a blatantly self-serving response to Southwest's Motion, is based on facts and evidence never before disclosed, and patently contradicts Plaintiff's prior binding admissions. Additionally, this new

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

theory is prejudicial because Southwest is precluded from investigating these new claims of numerous non-Black passengers being treated differently than her.

Southwest requests that the Court disregard this new theory and evidence under Fed. R. Civ. P. 37(c)(1). Moreover, "the general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit [or statement] contradicting his prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012); *see also Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009); *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("[A] new theory of liability at the summary judgment stage would prejudice the defendant. . ."); *Shamburger v. Roy*, 50 F.3d 16 (9th Cir. 1995) (new allegation raised for the first time in opposition disregarded); *Saif'Ullah v. Cruzen*, 2017 U.S. Dist. LEXIS 177873, at *9 (N.D. Cal. Oct. 26, 2017) (new facts alleged "for the first time in [] opposition are untimely"); *AJ Reyes v. Educ. Credit Mgmt. Corp.*, 2016 U.S. Dist. LEXIS 66821, 2016 WL 2944294, at *4 (S.D. Cal. May 19, 2016) ("factual allegations raised for the first time in opposition" rejected); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (judicial estoppel bars a party from making a factual assertion in a legal proceeding "which directly contradicts an earlier assertion made in the same proceeding or a prior one").

Accordingly, all purported evidence of non-Black passengers boarding with beverages, and all purported evidence of numerous other inappropriately dressed passengers, should be disregarded in its entirety. This includes the attorney-drafted declaration of passenger Randi Mier, who is Hispanic, not Caucasian, and all alleged facts therein—none of which were ever disclosed in discovery[1] and which

---

[1] Although Plaintiff's counsel disclosed the existence of the declaration as attorney-work product in a privilege log, the fact that Plaintiff would be relying on these new facts and new theory of liability was never disclosed in discovery. Whether the declaration itself constituted work product or not, Plaintiff was obligated to disclose the underlying <u>facts</u> supporting her theory of liability (i.e., that non-Blacks, not just "Caucasians, with beverages were treated differently; and that there were several non-Black passengers similarly dressed, not just a single Caucasian) in

do not support Plaintiff's original theory of liability.

### A. New Evidence Regarding Non-Black Passengers Boarding with Beverages Should be Disregarded

In her Complaint and discovery responses, Plaintiff alleged that "other Caucasian passengers" boarding the aircraft with beverages were not questioned. (Complaint, 4:27-28; Resp. to Rogs, 6:19-20). At her deposition, Plaintiff testified that "white Caucasian passengers" were boarding with beverages and were not questioned. (Ex. 37, Sanders Depo., 128:1-6). Importantly, she explicitly testified that she never saw any passengers who were **not** Caucasian boarding with a beverage in their hand. (*Id.* at 131:22-133:6).

Now, in her Opposition, Plaintiff states for the first time that she "observed Caucasian **and non-Black passengers** boarding with beverages without being questioned." (Opp'n, 3:4-5; AF 75). As explained above, the Court should disregard any evidence concerning non-Black passengers boarding with beverages because Plaintiff is bound by her prior admissions; because of her failure to provide any information regarding these alleged passengers sooner; and because the failure was not harmless.

### B. New Evidence Regarding Non-Black and Other Caucasian Passengers with "Revealing Attire" Should be Disregarded

Throughout this litigation, Plaintiff has explicitly and continuously maintained that there was **one** other passenger similarly situated because she was dressed inappropriately, and that this passenger was young, female and Caucasian. (Complaint, 6:14-15; Resp. to Rogs., 7:27-28; Ex. 37, Sanders Depo., 129:1-19, 172:22-73:4).

Victor Rane
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

response to Southwest's Interrogatory Nos. 1 and 4. (Ex. 49 to Poltash Decl.)

Now, Plaintiff presents the declaration of Randi Mier ("Mier Declaration" or "Mier's Declaration"), which asserts that **numerous** other unidentified Caucasians **and non-Black passengers** were dressed in "far more revealing" attire than Plaintiff. Once again, this belated factual allegation is not harmless because it precluded Southwest from taking discovery regarding these alleged non-Black passengers, and should be disregarded based on the reasons and authority above.

### C. Even if the Court Accepted Plaintiff's New Evidence and Theory of Liability, the Evidence is Not Substantial or Specific Enough to Infer Racism

Notwithstanding the consensus of law supporting Southwest's request to disregard Plaintiff's new evidence and theory, even if this Court were to consider it, Plaintiff's racial discrimination claims still fail because the evidence in the Mier Declaration is not substantial or specific. The declaration contains no description of the specific race, approximate age, or physical features of any Caucasian or non-Black (which, itself, is vague) passengers, approximately where they were seated in the aircraft, or how many of them were treated differently than Plaintiff. There are also no specific facts regarding any interaction between these other passengers and the crew, if any. (Opp'n, Ex. 40).

Regarding the to-go cup incident, Plaintiff has failed to identify a single Caucasian passenger who allegedly boarded with a beverage in support of her original claim, and Randi Mier ("Mier") is the only non-Black passenger identified by Plaintiff who allegedly boarded with a beverage in support of Plaintiff's new claim. However, the Mier Declaration does not provide details that are substantial or specific enough to determine whether Mier was similarly situated to Phillips. Other than claiming she carried "a cup" onboard the aircraft (Opp'n, Ex. 40, ¶ 5), she does not state where her cup came from, nor does she provide any description of the cup whatsoever. The omission of these details is significant because flight attendant Elena Karenev ("Karenev") testified that, at that time at the start of the

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

COVID-19 pandemic, her attention was drawn to passengers carrying a specific clear cup from a bar in the terminal. (Ex. 38, Karenev Depo. 111:21-115:6; 120:9-122:11; Ex. 14 to Carroll Decl.). Not coincidentally, Karenev's description of the cup matched Plaintiff's description of the cup that Phillips carried, which Plaintiff also admitted came from the bar in the terminal. (Ex. 37, Sanders Depo. 123:5-13). Not only is the Mier Declaration devoid of these critical facts, but additional evidence suggests her cup was not the same. When Southwest's counsel interviewed Mier, Mier stated that she had a "large soda cup" as she boarded, and "could not recall" whether it contained alcohol. (DeWarr Decl., ¶4).[2] In short, it is clear that these bare allegations are not substantial or specific enough such that a jury can reasonably conclude that Mier, or any other passenger, was similarly situated to Plaintiff.

Even if the Court were to consider Mier's declaration regarding the to-go cup incident, further presume that Mier's cup was similar to Phillips' cup, and ignore that Mier supports Plaintiff's new "non-Black" class of similarly situated passengers, the fact that one passenger passed by  Karenev with a cup is insufficient evidence of pretext. This is all notwithstanding the fact that the Court should disregard this entire incident because it does not involve any allegedly discriminatory act against Plaintiff.

With respect to the incident involving Plaintiff's inappropriate attire,  even if the Court were to consider Plaintiff's new claim that more than one Caucasian *and* non-Black passengers were similarly dressed, Mier's Declaration is woefully inadequate on detail from which a finder of fact could conclude that Plaintiff's attire, and that of these other alleged passengers, were reasonably similar. For example, Mier's Declaration fails to provide any physical characteristics of these

---

[2] Counsel also confirmed that Mier is Hispanic, not Caucasian (DeWarr Decl., ¶4), and thus she does not support Plaintiff's original claim of seeing only Caucasian passengers board with beverages.

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

alleged additional passengers, other than generally stating they were "Caucasian." (Opp'n, Ex. 40, ¶¶ 4, 6). Critically, the declaration fails to provide an adequate description of their attire (which not even Plaintiff claims to have ever seen), other than a vague reference to the *type* of articles of clothing involved, and her conclusory, subjective belief that their attire was "far more revealing." Mier does not even describe whether their attire exposed skin, underwear, or body parts in a manner similar to Plaintiff's attire. The inadequacy of Plaintiff's new "similarly situated" evidence through the attorney-drafted Mier Declaration is even more glaring in light of the fact that Mier does not even corroborate Plaintiff's claim that a passenger wore a sheer, see-through shirt, which would have been much more noticeable than anything Meir claims to have seen.

In short, Plaintiff's vague and minimal allegations regarding the similarity between Plaintiff and these other alleged passengers, who were never identified despite production of passenger contact information, remain woefully short of the specific and substantial evidence of pretext required to reach a jury. *Aragon v. Republic Silver State Disposal*, 292 F.3d 654, 659 (9th Cir. 2002); *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1061 (9th Cir. 2002).

## III.   PLAINTIFF'S NUMEROUS MISREPRESENTATIONS OF FACTS SHOULD BE DISREGARDED

Plaintiff's Opposition is largely devoted to pages of factual recitations which either outright misstate the evidence, or provide patently misleading excerpts.

### A. Check-in Counter

Plaintiff baselessly states that Southwest agents "did not similarly mock any Caucasian passengers at the check in counter." (Opp'n, 2:8-9). This false statement directly contradicts Plaintiff's sworn deposition testimony, in which Plaintiff admits that she did not see these agents interact with any other passengers dropping their bags. (Ex. 37, Sanders Depo., 76:4-7).

/ /

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

**B. Ms. Phillips' To-Go Beverage**

In her Opposition, Plaintiff falsely states that she "observed Caucasian and non-Black passengers boarding with beverages without being questioned." (Opp'n, 3:4-5). However, Plaintiff was explicitly clear in her deposition, testifying that she "knows emphatically" that she only saw Caucasian passengers boarding with beverages and did not see any African American or brown-skinned passengers boarding with cups. (Ex. 37, Sanders Depo., 131:22-133:6). Still, Plaintiff has no corroborating evidence of a single Caucasian passenger boarding with a similar cup. Plaintiff makes this new, fabricated claim solely to account for the fact that Randi Mier, the only passenger Plaintiff could find during discovery who boarded with a beverage, is not Caucasian. (DeWarr Decl., ¶ 4).

Plaintiff also falsely states that "Karenev admits she had no reason to believe Plaintiff or Phillips were intoxicated or were being untruthful when they told her the cup contained water." (Opposition, 2:25-3:1). Directly contradicting this is FA Karenev's deposition testimony that Plaintiff told her that they had been drinking, and that this is why FA Karenev smelled the cup. (Ex. 38, Karenev Depo., 112:8-14; 115:23 -116:3). FA Karenev also testified that the cup was similar to to-go cups from the airport bar with which passengers frequently tried to board flights with alcohol during that time. (Ex. 38, Karenev Depo. 111:21-115:6; 120:9 - 122:11; Ex. 14 to Carroll Decl.).

Plaintiff falsely states that "Karenev and the other FAs admit they did not 'smell' the beverages of any other passengers boarding." (Opposition, 3:6-7). FA Karenev testified that she "does not remember" how many other cups she similarly smelled; and that she would have done the same for any passenger boarding with a similar cup. (Ex. 38, Karenev Depo., 120:19-125:15). FA Karenev did not testify that she did not smell the beverages of any other passengers.

Plaintiff also falsely states that "neither Karenev nor the other FAs involved in the incident, have ever, in their entire careers, smelled a passenger's beverage to

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

1   determine if it contained alcohol." (Opposition, 3:9-11). FA Karenev was never

2   asked if she had ever done that before, and FA Benedict testified that she would

3   smell a passenger's cup if she suspected alcohol but she "doesn't remember"

4   whether she ever did that before. She did not testify that she never smelled a cup

5   before. (Ex. 42, Benedict Depo., 65:10 -66:8).

6       Plaintiff further falsely states that smelling the cup "did not comport with

7   Southwest's Alcohol policy, or federal regulations." (Opposition, 3:11-13).

8   However, Southwest's written policies explicitly reference 14 CFR Part 121.575,

9   the federal regulation prohibiting consumption of alcohol onboard the aircraft

10  unless served by the crew. While Southwest written policies do not provide a step-

11  by-step resource for exactly how this policy should be enforced, Southwest's

12  company representative testified that the policy for flight attendants is to use their

13  judgment and that they may "look," "ask" or "smell" in order to enforce the policy.

14  (Ex. 45, Vandermark Depo., 83:16-84:1; 88:5-24; 89:4-90:4).

15      **C. Plaintiff's Inappropriate Attire**

16      Plaintiff incorrectly accuses FA Karenev of fabricating passenger complaints

17  concerning Plaintiff's attire. (Opposition, 3:17-20). FA Karenev testified that the

18  first officer and two African American passengers reacted and/or made comments

19  indicating their disapproval with Plaintiff's outfit, which FA Karenev specifically

20  mentions in her incident report. (Ex. 38, Karenev Depo.,129:12 -132:22; 134:23 -

21  135:1; 239:12 – 242:9). Captain Meifert confirmed that FA Karenev informed him

22  of these passenger complaints. (Ex. 41, Meifert Depo., 57:4 -15; 59:18 – 60:6).

23  Strangely, Plaintiff immediately follows this false accusation with FA Karenev's

24  testimony explaining what she believed to be the exact complaints Plaintiff

25  contradictorily alleges were nonexistent. (Opposition 3:24-4:1).

26      Plaintiff also falsely states that Southwest "initially denied" these passenger

27  complaints. (Opposition, 3:20-23). Southwest's initial discovery response served

28  early in discovery only stated that it was continuing to investigate the identity of

1  individuals who complained. (Poltash Decl., ¶ ). Southwest subsequently produced

2  the names and contact information for 20 passengers, including the two African

3  American passengers referenced by FA Karenev; listed these passengers in

4  Southwest's initial disclosures; and supplemented its discovery responses to

5  describe the referenced passenger complaints. (*Id*.).

6        Plaintiff's claim that Southwest shifted from complaints about Plaintiff's

7  "sides" to other issues with her attire is patently false. (Opposition, 8:15-16). The

8  evidence shows that, from the beginning, FA Karenev first noticed that Plaintiff's

9  buttocks and underwear were partially exposed. (Ex. 38, Karenev Depo., 129:12 –

10  131:5). She documents this in her report made at the time. (Ex. 14 to Carroll

11  Decl.). Supervisor Jackson testified that this is also what FA Karenev told her, and

12  she too documented it in her report. (Ex. 44, Jackson Depo., p. 51:17 -52:2;

13  Jackson PNR Notes). FAs Andrus and Benedict testified to the same, and FA

14  Benedict documented it in her report. (Ex. 39, Andrus Depo. p. 97; Benedict p. 95;

15  Ex. 13 to Carroll Decl.). Supervisor Thomas testified to the same, and also

16  documented it in his report. (Ex. 43, Thomas Depo., 55:17-24; 57:1-10).

17        Plaintiff also falsely states that "Karenev curiously testified she lied to

18  Plaintiff about not having any blankets because the blankets on the plane were for

19  medical use." (Opposition, 4:10-12). FA Karenev never testified that she lied to

20  Plaintiff. She testified that she told Plaintiff they did not have any blankets for her,

21  and that it would <u>not</u> have been standard procedure or appropriate to use the few

22  medical blankets onboard that are reserved for medical emergencies, as this was

23  not a medical emergency. (Ex. 38, Karenev Depo., 139:9-14, 146:3-16).

24        Plaintiff also misrepresents FA Andrus's testimony on this subject: "When

25  FA Andrus was asked why she did not look for a blanket when she heard Plaintiff

26  ask for one, she flippantly stated 'it did not occur to me to look.'" (Opposition,

27  4:15-16). Plaintiff omits the fact that the question FA Andrus was asked was why

28  she did not check for any "*medical*" blankets. Naturally, because this was not a

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

medical emergency, it did not and would not have occurred to FA Andrus to look for medical blankets. (Ex. 39, Andrus Depo., 85:12-14).

Plaintiff further misleadingly asserts that "there is no such thing" as medical blankets in Southwest policy or federal regulations. (Opposition, 4:12-14). Plaintiff seems to rely solely on the fact that federal regulations describing the equipment which must be included in medical kits does not include the word "blanket." However, Plaintiff never requested Southwest's policies regarding medical kits and did not ask any questions of Southwest's representatives at deposition about medical blankets. Southwest's aircraft are equipped with an emergency medical kit and two sealed bags containing medical blankets, and flight attendants are trained that medical blankets "must not be provided to Passengers or used by Flight Attendants for non medical events." (Vandermark Decl., ¶¶ 2-3).

In describing the alleged Caucasian passenger with the low-cut top, Plaintiff also provides a misleading excerpt of the testimony of Customer Service Supervisor Thomas. She states that he saw this alleged Caucasian passenger, she was not wearing a bra, and he "had never seen a top like that." (Opposition, 5:26-28). What Plaintiff fails to include is that Supervisor Thomas stated the low-cut top had a "very narrow opening," you definitely could not see the passenger's nipples, and he presumed the passenger was not wearing a bra because the "narrow opening" cut lower than where a bra would be and there was no bra showing, only skin. Crucially, Plaintiff leaves out that Supervisor Thomas testified that the other passenger's outfit "didn't strike me as anything that was too revealing," and that he recalled the low-cut top might have been red – a fact which further supports that Catherine Luna was the passenger Plaintiff referenced with the low-cut top because her top was red-ish in color, and certainly not white, as Plaintiff alleges. (Thomas p. 77:12-81:4).

### D. Removal from the Aircraft

With respect to Plaintiff's removal from the aircraft, she provides many

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

1   more false and misleading statements. Plaintiff frames the issue as one in which

2   she quickly complies by covering up with a shirt offered by another passenger.

3   (Opposition, 7:11-24). Plaintiff's statements that she was not "given an option to

4   comply" and that she "never refused to cover up when asked to do so" are patently

5   false. (Opposition, 8:17-19).

6         The video evidence makes clear that Plaintiff only accepted the shirt after

7   resisting for more than 15 minutes with confrontational and insulting behavior by

8   her and Phillips. (Ex. 3 to Notowitz Decl., 00:00-06:05). FA Karenev and

9   Supervisor Jackson separately asked if she had something to cover up with.

10  Plaintiff said no, and expressly stated on video that she would not cover up even if

11  she had something. (UMF 32). When Jackson offered to buy something for

12  Plaintiff at the store, the video captures Plaintiff immediately refusing to comply

13  again, by yelling "for what?" with an explanation for why she does not need to

14  cover up. (Ex. 3 to Notowitz Decl., 3:50-4:05).

15        By the time she accepted the shirt from the other passenger, the crew was

16  not concerned about her compliance with covering up, but instead the potential

17  safety concern after takeoff, of two passengers who were yelling at crew and

18  passengers, insulting, confrontational, and, at best, demonstrated a reluctance to

19  comply with crew instructions. This is well-documented by all three flight

20  attendants, which the Captain accepted per policy, procedure, federal regulations,

21  and caselaw interpreting such. *Karrani v. JetBlue Airways Corp.*, 825 F. App'x

22  535, 536 (9th Cir. 2020) (declining to hold further investigation by pilot necessary

23  under 49 U.S.C. § 44902 because airline pilots are entitled to accept flight

24  attendant reports when making the decision to refuse transport); (Ex. 13 to Carroll

25  Decl.; Ex. 42, Benedict Depo., 105:6 – 106:5; 108:19 – 109:11; Ex. 14 to Carroll

26  Decl.; Ex. 38, Karenev Depo., 164:17 – 165:24; 178:4-19; 182:3 – 185:18; 189:4-

27  191:9; 194:23-197:11; Ex. 11 to Carroll Decl.; Ex. 41, Meifert Depo., 42:7-25,

28  47:8-14, 49:5-15, 54:3-25). Supervisor Thomas' comment on police body camera

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

footage that the crew "was not having it" only further supports the obvious fact that Plaintiff's agreement to take the shirt came much too late after sustained combative and disruptive behavior.

There is also absolutely no evidence to support Plaintiff's assertions that FA Karenev was "intent all along" in getting Plaintiff and Phillips removed (Opposition, 7:17-18), or that the crew was "following Karenev's instruction" on removal. (Opposition, 7:22-8:1). FA Karenev testified that she specifically *removed* herself from the situation after only a few minutes of interaction (which is also documented on video) and stood out-of-site in the front galley of the aircraft. (Ex. 38, Karenev Depo., 142:3-13; 182:24 – 185:3; Ex. 3 to Notowitz Decl., 00:00-01:30, 15:54-17:07). FA Karenev turned the situation over to Supervisor Dell Jackson to handle, who agreed that Plaintiff made it about race. (Ex. 44, Jackson Depo, 87:22 – 89:14). The video confirms that the only flight attendants who stood nearby and observed Plaintiff and Phillips' behavior while Supervisor Jackson spoke with them were FAs Andrus and Benedict, and that the decision to remove was only made after these separate interactions took place. (Ex. 3 to Notowitz Decl., 01:30-15:54). FA Karenev agreed with the decision to remove, but there is no evidence that she was alone in, or led that, decision. FA Karenev testified that FAs Andrus and Benedict supported the decision to remove based on their separate observations of Plaintiff and Phillips while FA Karenev was not present. (Ex. 38, Karenev Depo., 189:23 – 190:20; 214:12-25). FA Karenev and Supervisor Jackson's communications on video where they *separately* attempt to come up with solutions before Plaintiff and Phillips become combative and disruptive, support these facts. (Ex. 3 to Notowitz Decl., 00:00-1:30, 3:50-4:05). FA Andrus confirms in her testimony that she conferred with FA Karenev regarding the decision to remove, and that Phillips called FA Andrus a "blue-eyed devil" during that process. (Ex. 39, Andrus Depo., 90-92). FA Benedict also confirms in her report and testimony that she conferred with FA Karenev and was concerned about

1    the safety of the crew and passengers. (Ex. 13 to Carroll Decl., Ex. 42, Benedict

2    Depo., p. 105- 106; 108-109).

3        Most importantly, even if FA Karenev "led the charge" in Plaintiff and her

4    aunt's removal – so what? There is no direct or circumstantial evidence that she

5    made any decisions based on race. Moreover, FA Karenev has no history of any

6    racial discrimination claims, let alone proven allegations. And, her demonstrated

7    pre-incident support of BLM and thorough knowledge of race, racism and racial

8    issues when challenged by Plaintiff's counsel at her deposition rebuts any

9    inference that her conduct on this day was motivated by race. (UMF 22; Ex. 38,

10   Karenev Depo., 281:1 – 289:25).

11       Plaintiff's claims that FA Karenev and Captain Meifert made no references

12   to safety in their reports, and that FA Karenev's deposition was the first time the

13   crew mentioned safety as a reason for removal, are also patently false. (Opposition,

14   9:2-10:2). The federal standard for removal relates to passengers who are or "might

15   be" inimical to safety, and does not require direct physical safety threats. 49 U.S.C.

16   § 44902; Ex. 9 to Carroll Decl., p. SWA000096-97. Notwithstanding the

17   overwhelming video evidence that demonstrates a valid concern that Plaintiff and

18   Phillips might pose a safety threat after takeoff due to their escalating verbal

19   confrontation with the crew, all Southwest employee reports written shortly after

20   the incident describe behavior by Plaintiff and Phillips that meets this standard.

21   (Exs. 11, 13 and 14 to Carroll Decl.). The reports describe "misconduct", "hostile"

22   behavior, refusal to comply, and an "escalating" situation, all of which go toward a

23   concern that Plaintiff and Phillips "might be" inimical to safety after takeoff. The

24   reports also reference the event type as a "threat level 1," which indicates

25   "threatening behavior" in the form of a "verbal security threat." (Ex. 13 to Carroll

26   Decl., p. SWA00077; Ex. 14 to Carroll Decl., p. SWA00073 and 75; Ex. 9 to

27   Carroll Decl., p. SWA00083). Examples of actions constituting a threat level 1 are

28   "disruptive, suspicious or threatening" behavior, including "shouting, profanity,

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

[and] refusing to respond to requests." (Ex. 9 to Carroll Decl., p. SWA00097).

Further, FA Karenev testified that the reason she took video of herself is she feared that she might be attacked. (Ex. 38, Karenev Depo., 199:3 - 22; 202:4-19; Ex. 3 to Notowitz Decl., 15:54-17:07). Additionally, the fact that the police were called (as documented on video and confirmed in FA Karenev's report) is evidence that the crew was concerned about safety on that day.

Plaintiff's assertion that she was "not disruptive" and "never directed any insults or words to anyone" is also false. (Opposition, 20:21-23). The indisputable video evidence establishes that Plaintiff made an immediate threat/attempt at intimidation by referencing the fact that Southwest should be sued. She twice demonstrated on video a refusal to comply; raised her voice and directed questions and comments toward other passengers to get them on her side and against the crew; cursed ("that's some shit" and "sorry about all the ass and titties"); and acted and spoke to the crew in concert with Phillips without attempting to stop Phillips' insults and racial comments. (Ex. 3 to Notowitz Decl., 00:16- 00:27, 00:37-01:03, 01:13-01:15, 01:20-01:27, 3:50-4:05, 1:30-7:20, 16:30-16:38).

**E. Southwest Policies and Training**

Plaintiff falsely provides that Southwest has no policies or training regarding passenger discrimination and harassment, and no policies regarding investigation of claims of passenger discrimination and harassment. However, Southwest testimony on the topic made clear that Southwest does not tolerate discrimination or harassment of passengers in any form, and that employees receive training on this. (Southwest Response to AF No. 62). With respect to investigations, Southwest testimony also made clear that the Customer Relations Department conducts investigations of passenger complaints of racial discrimination. (Declaration of Michelle Buckley ["Buckley Decl."], ¶¶ 2-6; Ex. 45, Vandermark Depo., 18:13-19:13; 74:10-21, 75:7-20). Plaintiff never submitted a complaint to Customer Relations, which is why an investigation of her allegations was not

conducted. (Buckley Decl., ¶ 6).

## IV.   PLAINTIFF CANNOT ESTABLISH INTENTIONAL RACIAL DISCRIMINATION BECAUSE HER ENTIRE CASE CONSISTS OF UNCORROBORATED, INSUBSTANTIAL, AND NON-SPECIFIC EVIDENCE

Although in some portions of her opposition Plaintiff appears to acknowledge the but-for causation standard applicable to this case, she also appears to argue that, in lieu of the *McDonnell Douglas* analysis and but-for causation standard, she can simply produce evidence that race was a motivating factor in Southwest's actions.[3] This is inaccurate in light of recent Supreme Court precedent, culminating in *Comcast*.

Plaintiff cites *Metoyer* and *McGinest* for the proposition that plaintiffs may choose to proceed under the *McDonnell Douglas* test, or "may simply produce direct or circumstantial evidence demonstrating a discriminatory reason more likely than not motivated [defendant in taking adverse action against the plaintiff] . . ." (Opp., 12:22-24). Plaintiff's reliance on decisions like *Metoyer* and *McGinest*, is misplaced, as these decisions relying on a "motivating factor" analysis are clearly inapplicable to § 1981 claims in light of the more recent Supreme Court decisions in *Gross, Nassar*, and *Comcast*.

Specifically, these decisions note that Title VII was amended by Congress in 1991 to include explicit language which provided for the lesser "motivating factor" causation standard with respect to discrimination claims. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 348-49 (2013) (Title VII amended to provide that an "unlawful employment practice is established when the complaining party demonstrates that race . . . or national origin was a motivating factor for any

---

[3] Although Plaintiff cites *Lindsey* for the proposition that courts "can" use the *McDonnell Douglas* test in § 1981 cases, *Lindsey* does not discuss the burden-shifting test as a mechanism that may or may not be used. *Lindsey v. SLT L.A., LLC*, 447 F.3d 1138, 1144 (9th Cir. 2006) ("[i]n order to evaluate claims of intentional discrimination where intent itself is generally impossible to prove, courts apply a burden-shifting analysis.").

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

1   employment practice, even though other factors also motivated the practice.").

2   Each of the three Supreme Court decisions analyzed the text of different statutes,

3   which had previously been interpreted according to Title VII discrimination case

4   law, and all three decisions held that the but-for causation standard, not the

5   motivating factor standard, applied. *Gross v. FBL Financial Services, Inc.*, 557 U.

6   S. 167, 176-177 (2009) (Age Discrimination in Employment Act of 1967); *Nassar*,

7   570 U.S. at 348-49 (retaliation claims under Title VII); *Comcast Corp. v. Nat'l*

8   *Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1017 (2020) (§ 1981).

9       After the decisions in *Gross* and *Nassar*, and before *Comcast*, the Ninth

10  Circuit explicitly noted that its prior decision in "*Metoyer* does not emerge from

11  *Gross* and *Nassar* unscathed." *Nat'l Ass'n of African Am.-Owned Media v. Charter*

12  *Communs., Inc.*, 915 F.3d 617, 624-25 (9th Cir. 2019) overruled on other grounds

13  by *Comcast*, 140 S. Ct. at 1017. Not only did *Metoyer* not emerge unscathed, but

14  the subsequent *Comcast* decision made explicitly clear that there is no place for a

15  motivating factor analysis in §1981 cases. *Comcast Corp. v. Nat'l Ass'n of African*

16  *Am.-Owned Media*, 140 S. Ct. 1009, 1017 (2020), ("Title VII was enacted in 1964;

17  this Court recognized its motivating factor test in 1989; and Congress replaced that

18  rule with its own version two years later. Meanwhile, §1981 dates back to 1866

19  and has never said a word about motivating factors.")

20      In other words, Plaintiff's attempt to circumvent the *McDonnell Douglas* test

21  and introduce "motivating factor" evidence relies on older Ninth Circuit case law

22  interpreting Title VII discrimination claims, and does not acknowledge recent

23  Supreme Court case law which makes clear that § 1981 claims are distinct from

24  Title VII claims and are subject to the more stringent but-for causation standard.

25      Regardless, Plaintiff fails to establish intentional racial discrimination both

26  under the appropriate *McDonnell Douglas* burden-shifting and but-for causation

27  analysis and under the inapplicable *Metoyer* "motivating factor" analysis.

28  / /

## A. Plaintiff Has Not Met Her Burden Under *McDonnell Douglas*

As stated in its moving papers, Southwest focuses its analysis for purposes of its motion for summary judgment on the second and third factors.

For the second factor, Plaintiff appears to attack the credibility of Southwest's legitimate, non-discriminatory reasons. Plaintiff misunderstands the applicable law on this point. There is a burden of production, not persuasion, at this step, which means that there is no credibility assessment of a defendant's evidence. *Lindsey*, 447 F.3d at 1147-48. Plaintiff does not dispute that Southwest presented legitimate, non-discriminatory reasons. Thus, Southwest has met its burden of production at this second step of the analysis.

With respect to the third and final step of the *McDonnell Douglas* analysis, Plaintiff asserts that she established pretext with both direct and circumstantial evidence of intentional racial discrimination. Southwest addresses each category of purported supporting evidence, in turn, below.

### 1. Plaintiff Does Not Have Direct Evidence of Discrimination

It is undisputed that none of the Southwest employees used any racial words or language in their encounters with Plaintiff on the date of the subject flight. (UMF 47). But in an unsuccessful attempt to establish direct evidence of intentional racial discrimination, Plaintiff cites limited evidence, none of which includes "racist statements" that prove discriminatory animus "**without inference or presumption**." *Aragon v. Republic Silver State Disposal*, 292 F.3d 654, 662 (9th Cir. 2002) (emphasis added).

Direct evidence is evidence which does not require the factfinder to make any inferences, and yet, with all of the purported direct evidence Plaintiff presents, she is asking the Court to make inferences. First, Plaintiff cites a reference from Captain Meifert's post-incident deposition testimony summarizing the incident. In describing what was relayed to him regarding FA Karenev's conversation with Plaintiff, Captain Meifert testified that Plaintiff was "starting to call the race card."

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

1   Plaintiff's attempt to use this summary of *Plaintiff's* own actions as direct evidence

2   of *Captain Meifert's* racial discrimination is unavailing. Plaintiff does not dispute

3   that during the discussions with Southwest employees onboard the aircraft, she and

4   her aunt introduced race into the discussion with the crew by baselessly claiming

5   that "they were being harassed for being African American." (AF 108). Captain

6   Meifert's summary of Plaintiff's conduct nearly two years after the incident is not

7   direct evidence of racial discrimination by Captain Meifert.

8       Plaintiff is also asking the Court to infer that post-incident text message

9   references to Plaintiff, which do not reference Plaintiff's race and do not involve

10  any racist statements, are direct evidence of racial discrimination. Once again,

11  these text exchanges, which occurred nearly two years after the incident and

12  involve no racial words, are not direct evidence of racial discrimination. The texts

13  refer to lewd and bizzare conduct they personally observed from Plaintiff. (*See*

14  UMF 52 and Southwest Response to AF 140).

15      With respect to the post-incident testimony of Captain Meifert and FA

16  Karenev, Plaintiff wants the Court to infer that the decision to call for a Black

17  Customer Service Supervisor was somehow direct evidence of discrimination.

18  However, Plaintiff fails to acknowledge the undisputed fact that a Black Customer

19  Service Supervisor was requested because Plaintiff had already accused the

20  Southwest flight crew of discrimination. Captain Meifert was clear that a Black

21  supervisor was called to "reduce the perception that this was, in any way, race

22  motivated." (Ex. 41, Meifert Depo., 49:16-22). The Black supervisor in question,

23  Dell Jackson, testified that the decision to involve her because of her race did not

24  offend her. (Ex. 44, Jackson Depo., 90:4-15). Jackson was also very clear in her

25  testimony that Plaintiff and Phillips made the incident about race when, in her

26  view, it had nothing to do with race, because "that's not our culture." (Ex. 44,

27  Jackson Depo., 87:22 – 89:14). A decision to call a Black supervisor in order to

28  attempt to deescalate the situation and remove race as a factor is not direct

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

evidence of intentional racial discrimination.

Lastly, a Southwest employee providing a description of Plaintiff's race to officers arriving at the gate does not constitute a racist statement. Even if the Court were permitted to make inferences with respect to direct evidence, no reasonable inference of discrimination can be drawn from any of the foregoing statements.

### 2. Plaintiff Lacks Circumstantial Evidence of Racism

Plaintiff asserts the following circumstantial evidence of intentional racial discrimination: (a) other complaints of discrimination; (b) lack of policies; (c) failure to comply with policies; and (d) generic arguments that Southwest's proffered explanations are unworthy of credence.

#### a. Plaintiff's Other Alleged Complaints of Discrimination Do Not Reasonably Infer Intentional Racial Discrimination Here

Plaintiff asserts that Customer Service Supervisor Justin Thomas has had a prior complaint of racial discrimination against him. Plaintiff fails to disclose that this was a verbal complaint made *after* the subject flight, whichinvolved a passenger who was upset that Thomas told her the alleged damage to her luggage was normal wear-and-tear for which the airline was not liable. (Ex. 43, Thomas Depo., 29:4-23). This post-incident unsubstantiated allegation does not constitute circumstantial evidence of discrimination by Mr. Thomas. More importantly, Mr. Thomas was not a witness to key events, or involved in any of the decisions related to the alleged discrimination at issue, with which Plaintiff seems to agree, as she clearly alleges that it was entirely FA Karenev's plan to remove Plaintiff from the flight. Regardless, this single unsubstantiated claim given Mr. Thomas's marginal role is plainly insufficient evidence of pretext.

With respect to FA Karenev, Plaintiff falsely asserts that she did not recall whether she had any racial discrimination complaints made against her. This not only misstates FA Karenev's testimony, it also contradicts Southwest's verified discovery responses. FA Karenev described each of the prior documented

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

1  complaints against her and expressly confirmed that they did not involve

2  allegations of discrimination, and in fact involved disputes with a white passenger

3  and colleague who was not Black. (Ex. 38, Karenev Depo., 74:22-75:23, 80:22-

4  82:17; 86:12-18). Additionally, Southwest served a verified discovery response

5  confirming that FA Karenev never had a prior written discrimination claim made

6  against her. (UMF 53).

7  　　　Plaintiff then turns to allegations completely unrelated to Plaintiff or the

8  employees who encountered Plaintiff. In asserting that these unrelated complaints

9  against other Southwest employees constitute circumstantial evidence of

10  discrimination, Plaintiff once again mistakenly relies upon inapplicable Title VII

11  discrimination case law, involving allegations of hostile workplaces and wrongful

12  termination by employers. Unlike plaintiffs in employment discrimination cases,

13  who alleged regular exposure to a culture of workplace harassment and

14  discrimination perpetuated or endorsed by *the very same persons* who fired them,

15  Plaintiff only had a fleeting and transient interaction with a handful of Southwest

16  employees.[4] Southwest employs more than 54,000 people in its operations at 121

17  airports across 11 countries. (Dkt No. 53, 8:23-9:10). Unsubstantiated complaints

18  made against Southwest employees who never encountered Plaintiff and have

19  likely never encountered the Southwest employees on the subject flight do not

20  constitute circumstantial evidence of the intent or motive of the six employees who

21  encountered Plaintiff before she was removed from an aircraft in Ontario,

22  California. Southwest further asserts that these claims were not the subject of

23  discovery because they were disclosed either after  the close of fact discovery, or

24

25  [4] *Heyne v. Caruso*, 69 F.3d 1475, 1480 (9th Cir. 1995) (Ninth Circuit held that evidence of a
defendant restaurant owner's prior alleged "sexual harassment of *other female workers* may be
26  used [] to prove his motive or intent *in discharging [plaintiff] Heyne*" after she refused his
advances) (emphasis added); *Estes v. Dick Smith Ford, Inc*., 856 F.2d 1097, 1104 (1988) (court
27  acknowledged that treatment of African American customers might not be probative "if the Ford
employees allegedly responsible for discrimination against customers *were unconnected with*
28  the employees who allegedly fired" the plaintiff. (emphasis added).

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

1   only now for the first time in Plaintiff's Opposition, which Southwest asks the

2   Court to disregard under Rule 37(c).[5] Additionally, such unsubstantiated claims by

3   a handful of Black passengers over a 5-year period against an airline that services

4   over 130 million passengers annually[6] is not substantial and specific evidence of

5   pretext for what transpired between one Plaintiff and six Southwest employees.

6            b.  *Southwest Does Not Lack Policies or Training Against*
                 *Discrimination*
7

8            Plaintiff vaguely asserts that "Southwest's lack of polices protecting minority

9   passengers and lack of training is evidence of animus." (Opposition, 17:12-13). The

10  AFs cited in support (72 and 137) make no reference to a lack of policies. However,

11  other AFs asserted by Plaintiff misstate Southwest testimony on the topics of

12  policies and training. Although Plaintiff attempts to paint a picture of a company

13  with no policies or training on the topic of passenger discrimination and

14  harassment, she conveniently leaves out that in instances where the topic is not

15  explicitly addressed in writing, Southwest testimony made clear that Southwest

16  does not tolerate discrimination or harassment of passengers and employees receive

17  training on this. (Southwest Response to AF No. 62). However, in AF No. 60,

18  Plaintiff acknowledges that "Southwest employees are expected not to discriminate

19  or harass passengers based on race." (AF 60). Additionally, this theory of liability is

20  not raised in Plaintiff's Complaint and should be disregarded.

21            c.  *Southwest Did not Fail to Comply with its Policies*

22           On this point, Plaintiff again provides a vague allegation that "Southwest

23

24  [5] Of note, Plaintiff does not include any of the "other complaints" made by third parties in her
    Additional Facts. However, the Opposition states "numerous other Black female passengers []
25  have made identical race discrimination complaints as Plaintiff" (Opp., 17:5-6) and this appears
    to be a reference to Exhibits 25-30 to the Sedaghatfar Declaration. Exhibit 29 was never
26  produced to Southwest, and Exhibits 25-28 and 30, were produced June 24, 10 days after the
    close of discovery, offering no opportunity for Southwest to investigate the claims.
27  [6] *See* https://swamedia.com/pages/corporate-fact-
    sheet#:~:text=ANNUAL%202019%20FINANCIAL%20AND%20OPERATING,Revenue%20p
28  assengers%20carried%3A%20134.1%20million

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

violated almost every policy and practice it had in dealing with Plaintiff."
(Opposition, 17:23-18:2). As explained in greater detail elsewhere in Southwest's
supporting papers, the video evidence clearly establishes the basis for Southwest's
decision to remove Plaintiff and Phillips from the aircraft. Further, Plaintiff's
assertion that Southwest violated "its promise not to enforce its policies
disproportionately or discriminate based on race" directly contradicts Plaintiff's
argument elsewhere in her Opposition (Opposition, 17:12-13), that Southwest
lacked such policies entirely. (Opposition, 18:1-2). Plaintiff cannot have it both
ways, and these inconsistent and unsubstantiated theories, which are not raised in
her Complaint, must be rejected.

### d. Plaintiff Fails To Demonstrate that Southwest's Proffered Explanations are Unworthy of Credence

The many falsehoods and misrepresentations asserted by Plaintiff in support
of her argument that Southwest's proffered explanations are unworthy of credence
are outlined in detail above, as are the newly disclosed facts supporting Plaintiff's
new theory of liability. As these must all be disregarded, Plaintiff is left with the
following evidence of pretext:

At the check-in/baggage drop counter, Plaintiff's new claim that the agents
"did not similarly mock any Caucasian passengers" is completely baseless as
demonstrated above, and the assertion of discrimination is solely Plaintiff's
subjective belief, which is inadequate. *Rodriguez v. IBM*, 960 F. Supp. 227, 231
(N.D. Cal. 1997).

With respect to the to-go cup, this incident did not involve any
discriminatory act against Plaintiff. Further, there is no corroboration of Plaintiff's
version of this event, not even by Plaintiff's aunt, who carried the beverage. The
fact that Mier claims she carried a cup onboard does not support Plaintiff's case
that other Caucasian passengers boarded with cups because Mier is not Caucasian
– she is Hispanic. Although Plaintiff makes much of the fact that Plaintiff and

Phillips were not intoxicated, this is irrelevant. Federal aviation regulations prohibit passengers from consuming alcohol onboard unless served by the crew – the appearance of intoxication is not necessary. FA Karenev was thus entitled to check the cup on the sole basis of screening for open alcoholic beverages.

With respect to Plaintiff's attire, Plaintiff asserts that it was "affiliated with African Culture." (Opposition, 1:19-20). This is a self-serving, unsubstantiated *opinion*, and Plaintiff submits no evidence to support this claim. Plaintiff's argument that Ms. Luna is not the passenger with the low-cut top is unavailing. The video evidence makes clear that Phillips is pointing toward Luna; Luna confirmed that Phillips spoke to her while deplaning; and the passenger seated next to Luna commented to her that he did not know why Plaintiff and Phillips would single her out for her attire. (UMF Nos. 34, 38, 39).  Plaintiff's description of a sheer, see-through shirt through which the passenger's breast and nipples were visible is not corroborated by anyone, including Mier. This uncorroborated, self-serving testimony of a single outfit no one remembers (and which has been debunked) is insufficient to survive summary judgment.

As for Plaintiff's removal, Plaintiff's attempt to distance her conduct from Phillips is also unavailing. The evidence is clear that Plaintiff's attire warranted addressing, and that her conduct (refusal to comply, combative behavior, yelling at other passengers, cursing, acting completely in concert with Phillips without attempting to curb her behavior and lewd gesturing in the gate area) warranted removal. (Ex. 3 to Notowitz Decl.; UMF 52). Indeed, when asked about Phillips' behavior with the flight attendants and supervisor, Plaintiff repeatedly defended her aunt's comments as simply being "matter of fact" in Plaintiff's opinion. (Ex. 37, Sanders Depo., 144:3-19; 172:16-21; 180:6-21).

Lastly, given the indisputable video evidence, overwhelming documentation of safety concerns by the crew, and the fact that the police were called, no reasonable jury could conclude that the crew had no concerns about safety in their

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

Victor Rane
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

1  decision to remove Plaintiff and Phillips.

2  In sum, Plaintiff's evidence woefully fails to satisfy *her burden* of proving

3  pretext. *Lindsey,* 432 F.3d at 962.

4  **B. Even if the Court Were to Consider the Motivating Factor Analysis,**

5  **Plaintiff Has Failed to Meet Her Burden**

6  For the reasons above, Plaintiff does not have specific or substantial

7  evidence of intentional racial discrimination, and her vague allegations do not meet

8  the but-for causation standard, or the lesser "motivating factor" standard. Plaintiff

9  has no direct evidence, and only vague, scant, self-serving and unsubstantiated

10  circumstantial evidence. This is insufficient to survive summary judgment.

11  **V.   PLAINTIFF FAILS TO ESTABLISH WHY HER REMAINING**

12  **CAUSES OF ACTION SHOULD NOT BE DISMISSED**

13  Plaintiff argues that her remaining state law and § 1983 causes of action are

14  not preempted because Southwest's safety reasons were pretext. As explained

15  above, Plaintiff has not established that Southwest's decision to remove Plaintiff

16  pursuant to 49 U.S.C. § 44902 was mere pretext. On the contrary, the

17  overwhelming evidence, including indisputable video footage, supports

18  Southwest's decision to remove and the preemption of Plaintiff's claims.

19  With respect to Plaintiff's § 1983 claim, the cases Plaintiff cites are

20  inapplicable, as they held that it was premature at the motion to dismiss stage to

21  make a factual inquiry regarding whether there was evidence of discrimination.

22  With respect to the § 2000d claim, Plaintiff cites *Fobbs* for the proposition that she

23  need not "plead" she was the intended beneficiary of a federally funded program,

24  but Plaintiff fails to note that at summary judgment, the program receiving federal

25  funding must be specifically identified and plaintiff must establish a nexus between

26  that program and the discrimination she alleges. *Fobbs v. Holy Cross Health Sys.*

27  *Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994). As to both claims, Plaintiff

28  acknowledges having no evidence to establish the essential elements and submits a

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

1   declaration under Rule 56(d) requesting time to conduct belated discovery as to

2   whether Southwest is a state actor (§ 1983) and for what specific programs

3   Southwest received federal funding (§ 2000d). As provided in Southwest's

4   objection to this declaration, Plaintiff's request for discovery on these topics is

5   improper, as Plaintiff should have conducted diligent discovery on her own causes

6   of action prior to the fact discovery cut-off.

7        Plaintiff's arguments on her Unruh, negligence, § 17200 and IIED claims are

8   also unavailing. Plaintiff's purported disparate impact evidence will not support an

9   Unruh claim because it does not involve the same employees who encountered

10   Plaintiff and should be disregarded under FRCP 37(c), the *Rowland* factors do not

11   support creation of a new legal duty in negligence, Plaintiff's alleged economic

12   loss in the cost of gas is attributable to her own behavior constituting a safety

13   concern and will not support a § 17200 claim, and Plaintiff has not established

14   "extreme and outrageous" conduct by Southwest to sustain an IIED claim.

## VI.   CONCLUSION

16        For the foregoing reasons, Southwest respectfully requests that the Court

17   grant its motion for summary judgment in its entirety.

19   Dated: August 29, 2022                    Respectfully submitted,

By: _____
     Richard A. Lazenby
     Natasha Mikha Pardasani
     Nicole A. Poltash
     VICTOR RANE
     Attorneys for Defendant
     SOUTHWEST AIRLINES CO.