# EXHIBIT 44

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

```
ADELENE SANDERS, an individual,    )
                                   )
          Plaintiff,               )
                                   )
vs.                                ) Case No.
                                   ) 2:21-CV-00451-DDP-MRW
SOUTHWEST AIRLINES CO., a          )
business entity of unknown form;   )
and DOES 1 through 100,            )
inclusive,                         )
                                   )
          Defendants.              )
_____)
```

VIDEOCONFERENCE DEPOSITION OF
DELL LAJOI JACKSON

Tuesday, April 12, 2022

11:00 A.M.

Stenographically Reported By:
Helena Flores, CSR No. 13313, RPR

```
1    Q.   And did you do that?
2    A.   No, I did not.
3    Q.   Why not?
4    A.   Something had -- I don't recall everything.
5  But she had made a very loud announcement, and another
6  passenger offered her a shirt for her to put on.  And
7  she had -- she was willing to put it on.
8    Q.   Okay.  And do you know whether or not the
9  stores were still open in the terminal at that time?
10   A.   I don't know if they were.
11   Q.   Okay.  And so -- and so you understood, during
12 the exchange between you and Ms. Adelene Sanders, that
13 she believed she was being targeted because she was a
14 black woman; correct?
15        MS. PARDASANI:  Objection.  Vague and
16 ambiguous.
17        THE WITNESS:  Yes.
18 BY MS. SEDAGHATFAR:
19   Q.   Because she told you that; correct?
20   A.   Yes.
21   Q.   And at some point in time, you testified that
22 there was a gentleman that offered Ms. Sanders a
23 T-shirt.
24   A.   Yes.
25   Q.   And Ms. Sanders accepted the T-shirt?
```

1          A.    Yes.

2          Q.    Okay.  And she placed it over her lap, on her

3    legs, I suppose?

4          A.    I'm not sure.

5                MS. PARDASANI:  Objection.  Vague and

6    ambiguous.

7    BY MS. SEDAGHATFAR:

8          Q.    What did she do with the T-shirt when the

9    gentleman handed her the T-shirt?

10               MS. PARDASANI:  Objection.  Vague and

11   ambiguous.  Calls for speculation.

12               THE WITNESS:  When the passenger offered

13   Ms. Sanders a T-shirt, I then turned around to head back

14   to the front of the aircraft.  So I knew that she was

15   willing to accept the T-shirt.  I did not see her put it

16   on.  I did not see where she put it at.  But I knew the

17   passenger reached up in his bin and gave it to her.

18   BY MS. SEDAGHATFAR:

19         Q.    Okay.  And during that exchange with you and

20   Ms. Adelene Sanders and her aunt, do you recall her aunt

21   making any comments?

22               And her aunt is Ms. Shelly Phillips.

23               MS. PARDASANI:  Objection.  Vague and

24   ambiguous.  Calls for speculation.

25               THE WITNESS:  Yes.

```
 1    section of this particular page, did you input these
 2    remarks?
 3         A.   I inputted the last remark under "Agent."  It
 4    says "E87258."
 5              (Reporter clarification.)
 6              THE WITNESS:  E87258.
 7    BY MS. SEDAGHATFAR:
 8         Q.   And you write "Please refer to PNR O5JG7B for
 9    information regarding passenger Sanders.  She is the
10    actual passenger who was denied boarding."
11              Do you see that?
12         A.   Yes.
13         Q.   And when did you input this?  Was it at
14    8:59 P.M.?
15         A.   Yes.
16         Q.   Is there any -- strike that.
17              Did you input that from your office that
18    evening?
19         A.   Yes.
20         Q.   So you were still there at 8:59 P.M.?
21         A.   Yes.
22         Q.   What were you doing from about 5:40- -- let's
23    say 5:57 P.M. until 8:59 P.M. that evening?
24              MS. PARDASANI:  Objection.  Vague and
25    ambiguous.  Calls for speculation.
```

1           THE WITNESS:  Sitting.
2      BY MS. SEDAGHATFAR:
3           Q.  Why were you still there at work?
4           A.  I was -- well, because I was -- just dealt with
5      this situation.  And, again, it was a very emotional
6      situation.  And so I really had to get myself together
7      because this was just -- it was just a bad situation for
8      all involved.
9           Q.  I understand.
10              So from the time that you left the gate and
11     went back into your office, you stayed there for about
12     three hours?
13          A.  Yes.  And that was -- I wrote -- I was writing
14     in the PNR too.
15          Q.  Sure.
16          A.  Yeah.  So just -- I can't explain it, but it
17     was just bad.  It was just bad.  And so it did -- it
18     took me some time to just get myself together about
19     that.
20          Q.  And what was bad about it?  Can you explain
21     what you mean?
22          A.  It was -- because when the passengers came off,
23     the racial allegations that they were saying and -- it
24     didn't have anything to do with race.  And it was the
25     whole culture, of what was going on with society.  It

1  was just bad.  You know, it was bad.  And so it was
2  just -- for me personally, it was just bad.  It was just
3  not good for me.
4        Q.   I understand.
5             And how do you know that it had nothing to do
6  with race?
7        A.   When I was called on the aircraft, it had
8  everything to do with her outfit, not her race.
9             Now, as far as everything else, I don't -- I
10 was never told they were pulled off because they were
11 Black.  And so -- that's not our culture; so that didn't
12 have anything to do with race.  So that's why I'm saying
13 it was just all bad.  Because it was not a racially
14 charged incident.  It was made to be, but it was not.
15       Q.   And you didn't know any of the three flight
16 attendants on board the aircraft prior to the incident;
17 correct?
18       A.   Correct.
19       Q.   Okay.  And so as you sit here today, you have
20 no basis to make the statement that you knew it wasn't
21 about race; correct?
22            MS. PARDASANI:  Objection.  Vague and
23 ambiguous.
24            THE WITNESS:  I'm basing that statement on,
25 when I was called to the aircraft, no one said, "Dell,

1  address them because they're Black."  That's what I'm
2  saying.
3  BY MS. SEDAGHATFAR:
4      Q.  Do you understand that you were called
5  specifically to come to the aircraft because the flight
6  attendant requested an African American supervisor?
7          MS. PARDASANI:  Objection.  Vague and
8  ambiguous.
9          THE WITNESS:  I've heard that.
10 BY MS. SEDAGHATFAR:
11     Q.  Does that offend you in any way?
12     A.  No.
13     Q.  You were okay with that?
14     A.  Well, I wasn't -- I wasn't aware at the time.
15 But even when I heard it, that doesn't offend me.
16     Q.  Okay.  Do you believe -- strike that.
17         As you sit here today, do you know any of the
18 history -- the work history of the flight attendants
19 that were on board the aircraft that particular date?
20     A.  No.
21     Q.  So you haven't reviewed the personnel files,
22 anything like that, of the flight attendants?
23     A.  No.
24     Q.  Okay.  So back to Southwest 52, you made this
25 notation at 8:59 P.M.

CERTIFICATION OF COURT REPORTER

FEDERAL JURAT

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken remotely at the date and time herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were placed under oath;

That a verbatim record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; further, that the foregoing is an accurate transcription thereof;.

That before completion of the deposition, a review of the transcript ( ) was (X) was not requested.

I further certify that I am neither financially interested in the action nor a relative or employee of any attorney of any of the parties.

IN WITNESS WHEREOF, I have this date subscribed my name, _____.

Dated April 20, 2022.

Helena Flores, CSR Number 13313, RPR