O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ADELENE SANDERS, | ) | Case No. CV 21-00451 DDP (MRWx) |
| Plaintiff, | ) ) ) | **ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | ) ) | |
| SOUTHWEST AIRLINES CO., | ) ) | |
| Defendants. | ) ) | |

Presently before the court is Defendant Southwest Airlines Co. ("Southwest")'s Motion for Summary Judgment. Having considered the submissions of the parties and heard oral argument, the court grants the motion in part, denies the motion in part, and adopts the following Order.

**I.  Background**

The matter arises from Plaintiff's interaction with Southwest crew on July 18, 2020. Plaintiff and her aunt, Shelly Phillips ("Phillips"), were ticketed passengers on a Southwest flight from Ontario, California to Las Vegas, Nevada. When Plaintiff arrived at the airport terminal, she retrieved boarding passes from a kiosk before proceeding to the baggage drop. There, according to

Plaintiff, two Caucasian female Southwest employees were acting "rude" and "mocking and laughing and pointing at her."

According to Plaintiff, these same two employees greeted her as she boarded the plane. Plaintiff and Phillips were the last passengers to board the aircraft, where all parties agree they were greeted by Southwest flight attendants ("FA") Elena Karanev, Chante Andrus, and Phyllis Benedict. FA Karanev approached Phillips, who was wearing a mask that read "Black Lives Matter" and holding a beverage in a plastic cup. FA Karanev later testified that she had no reason to believe that Plaintiff or Phillips were intoxicated, but that the cup looked like the type used at a nearby airport bar, and that Plaintiff stated "in a very friendly manner" that she and Phillips had been drinking. Both Plaintiff and Phillips stated, however, that the cup did not contain alcohol, and Plaintiff later testified that she had not been drinking. FA Karanev smelled Phillips' cup and determined that, consistent with Plaintiff and Phillips' representations, the cup indeed did not contain alcohol. Plaintiff testified that other, non-Black passengers also boarded the plane with beverages, but that flight attendants did not smell any other passenger's beverage.

After the discussion regarding Phillips' beverage, Plaintiff and Phillips entered the aircraft and went toward their seats. According to FA Karenev, she, the First Officer, and two African-American passengers in the front row were "taken aback" by Plaintiff's revealing attire as she passed by. According to FA Karanev, Plaintiff's sides, G-string underwear, and buttocks were visible. FA Karanev testified that one of the front-row passengers

2

looked at her and the First Officer and said, "Bless your heart, honey, on what you have to deal with."

FA Karanev then approached Plaintiff, who by that time was seated in an interior seat, and asked if Plaintiff had anything to "cover her sides." Plaintiff responded that her bag had been checked in and she did not possess anything to cover her sides. Plaintiff asked for a blanket, but FA Karanev informed her there were no blankets available. According to FA Karanev, Plaintiff then began "escalating the situation," stating that even if she had something with which to cover up, it was her right to wear whatever she wanted. Video evidence also shows Plaintiff stating, "If I did, I still wouldn't," that she should be able to wear whatever she wants, and that Southwest should get sued.

According to FA Karanev, although she attempted to keep the interaction with Plaintiff "discreet," Plaintiff began engaging with and involving other passengers, including by "yelling" to passengers several seats away and stating to other passengers on the aircraft that her rights were being violated because she is Black. Plaintiff also referred to other passengers wearing "low-cut tops," "sheer" and "see-through" tops that "you could see her nipples through," and questioned why those passengers were not being asked to cover up. Plaintiff can be seen on video requesting that a fellow passenger, who was recording the incident from across the aisle two rows away, send Plaintiff the video.

FA Karanev removed herself from the interaction and requested a Black Southwest customer service supervisor, Dell Jackson, to help resolve the situation. Most of Ms. Jackson's colloquy with Plaintiff was recorded on video. Ms. Jackson addressed Plaintiff

3

and inquired as to whether she had anything she could use to cover up. Plaintiff stated that Jackson was harassing her with the same questions that FA Karanev had already asked. Plaintiff raised her voice and asked the entire plane, "Is there anybody on this flight that's offended by what I am wearing? Can you please raise your hand now?" Plaintiff then repeatedly stated, in a raised voice, "I am being harassed right now." Jackson asked Plaintiff to lower her voice, to which Plaintiff responded, "It's a blatant disrespect and harassment right now." Shortly thereafter, Plaintiff accepted a fellow passenger's offer of a T-shirt, stating, "Trust me, this is gonna be a whole situation." Plaintiff can also be heard apologizing to fellow passengers. Jackson walked towards FA Karanev and the rest of the Southwest crew to inform them of Plaintiff's decision to accept the offer of a T-shirt. Plaintiff continued to yell, asking whether Jackson wanted to see Plaintiff put on the T-shirt.

At some point prior to Jackson's interaction with Plaintiff, captain Alex Meifert was notified that there was a "situation." A flight attendant told Meifert that passengers had brought Plaintiff's attire "to [the flight attendant's] attention or [] were upset by it." The First Officer confirmed that Plaintiff was wearing "a skimpy garment and her rear end was exposed." From the cockpit, Meifert could not hear Plaintiff, but could see her standing in her row, and was told by a flight attendant that when asked to cover up, Plaintiff had responded, "I know my rights." Meifert testified that Jackon was called to help resolve the issue because the situation was escalating. According to Meifert, Jackson and the flight attendants "mutually agreed" that Plaintiff

4

would be removed from the plane. According to Meifert, flight attendants told him that Plaintiff refused to cover up even when offered a garment by another passenger. Meifert further testified that one flight attendant "was visibly shaken and felt intimidated," and "didn't feel comfortable going on with the situation."

At some point, Plaintiff and Phillips were informed that they needed to exit the plane, or the police would be called. Approximately fifteen minutes after the first interaction with Ms. Jackson, Plaintiff and Phillips de-boarded the aircraft. As they did so, Phillips told Plaintiff, "Cover your butt up." Plaintiff stated to fellow passengers, "Sorry for all the ass and the titties." From the terminal, Plaintiff stood in front of a window and made rude gestures to Meifert and the First Officer in the cockpit, including exposing and slapping her buttocks.

Plaintiff's Complaint alleges causes of action for racial discrimination in violation of 42 U.S.C. §§ 1981, 1983, and 2000(d) and the California Unruh Civil Rights Act, Cal. Civ. Code § 51, et seq.; as well as causes of action for Negligence; violation of California Business and Professions Code §17200, et seq.; and Intentional Infliction of Emotional Distress ("IIED"). Southwest now moves for summary judgment on all claims.

**II. Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party

5

seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275,

6

1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

A. 42 U.S.C. § 1981

Plaintiff alleges that by removing her from the flight, Southwest violated her equal right to make and enforce contracts, in violation of 42 U.S.C. § 1981. 42 U.S.C.A. § 1981 ("All persons . . . shall have the same right . . to make and enforce . . . and to the full and equal benefit of all laws . . . as is enjoyed by white citizens."). To succeed on her claim, Plaintiff must "prove that, but for race, [she] would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Assoc. of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020). The framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), is one tool for assessing such claims. Id. at 1019. "Under McDonnell Douglas, if the plaintiff satisfies the initial burden of establishing a prima facie case of racial discrimination, the burden shifts to the defendant to prove it had a legitimate non-discriminatory reason for the adverse action. If the defendant meets that burden, the plaintiff must prove that such a reason was merely a pretext for intentional discrimination." Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1144 (9th Cir. 2006) (internal citation omitted). The McDonnell Douglas factors, however, were designed for application to employment discrimination claims. Id.

7

at 1144.  In the § 1981 context, a plaintiff must show that (1) she is a member of a protected class, (2) she attempted to contract for services, (3) she was denied the right to contract for those services, which were (4) (A) available to similarly-situated individuals outside the protected class, or (B) provided "in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory."[1]  Id. at 1145.  Although Southwest does not concede any factor, it focuses its arguments on the two factors: non-discriminatory basis and pretext.  (Reply at 16:2-3.)  See Lindsey, 447 F.3d at 1144 ("The proof required to establish a prima facie case is minimal and does not even need to rise to the level of a preponderance of the evidence.") (internal quotation marks omitted).

    Southwest argues that it had nondiscriminatory reasons for removing Plaintiff from the aircraft.  First, Southwest points to FA Karenev's need, pursuant to 14 C.F.R. § 121.575 and 14 C.F.R. § 135.121, to confirm that Plaintiff was not bringing an open container of alcohol onboard as a nondiscriminatory justification for "approaching" Plaintiff.  The thrust of this argument is not entirely clear.  There is no dispute that Plaintiff was not carrying any type of beverage.  Although Plaintiff's aunt, Phillips, was carrying a cup of liquid, she and Plaintiff had already informed Karenev that the cup did not contain alcohol, and

---

[1] The Ninth Circuit has approved of, but not formally adopted, this interpretation of the fourth factor.  Lindsay, 447 F.3d at 1145.  Courts within this circuit regularly apply the test in this form, particularly in claims against airlines.  See, e.g., Wachuku v. Jet Blue Airways Corp., No. 220CV01061VAPPVCX, 2021 WL 4497497, at *4 (C.D. Cal. July 14, 2021).  In any event, Southwest explicitly focuses its arguments on the second and third factors: non-discriminatory basis and pretext.  (Reply at 16:2-3.)

8

FA Karenev herself testified that she had no reason to believe Plaintiff or Phillips was intoxicated. Plaintiff was not removed from the flight for any alcohol-related reason, nor did she even arguably refuse to comply with any beverage-related instruction from Southwest crew. The beverage incident, therefore, does not provide any nondiscriminatory basis for Southwest's decision to remove Plaintiff from the plane.[2]

Southwest's argument then shifts to contend that Plaintiff was removed for the race-neutral reason that she posed, or might have posed, a safety risk. Southwest points to its own contract of carriage, which provides for removal of passengers who refuse to comply with crew instructions, verbally confront the crew, wear "lewd, obscene, or patently offensive" clothing, and engage in "disorderly" or "belligerent" behavior. Southwest also cites to 14 C.F.R. § 91.3(a) and 49 U.S.C. § 44902(b), which, together, grant an airplane pilot "final authority" to decide whether a passenger "is or might be, inimical to safety" and to refuse transport on that basis.

A carrier's decision to deny passage must be reasonable under the facts and circumstances known to the airline at the time. Cordero v. Cia Mexicana De Aviacion, S. A., 681 F.2d 669, 671 (9th Cir. 1982). Southwest asserts that its decision to remove Plaintiff from the plane was reasonable because (1) Plaintiff's

---

[2] Although FA Karenev also testified that the cup looked like the type provided at a nearby bar, and that Plaintiff stated that she and Phillips had been drinking, the question at this stage is not whether the evidence is sufficient to support Southwest's position. As discussed above, such evidence appears to have no bearing on the second McDonnell Douglas factor, although it might have some relevance as to the third.

attire exposed her sides, underwear, and buttocks, (2) Plaintiff refused to comply with crew requests that she cover up, and (3) Plaintiff was verbally abusive toward the crew and fellow passengers. Southwest's burden at this stage of the McDonnell Douglas analysis is one of production, not of persuasion, and entails no credibility analysis. Lindsey, 447 F.3d at 1147. Southwest need only offer some evidence upon which a trier of fact could conclude that Plaintiff was denied passage for some legitimate reason. See Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142 (2000). Southwest has met that relatively modest burden.

The crux of the matter here, as Southwest acknowledges, is whether there is a genuine dispute as to whether Southwest's proffered, race-neutral basis for deplaning Plaintiff was pretextual. In most cases, questions as to whether a pilot reasonably considered a passenger to be a safety risk should be left to the trier of fact. Eid v. Alaska Airlines, Inc., 621 F.3d 858, 869 (9th Cir. 2010). In Cordero, for example, the court vacated a judgment in favor of an airline where the record included evidence that a pilot refused the plaintiff passage "without even the most cursory inquiry into the complaint against him." Cordero, 681 F.2d at 672. A plaintiff can meet her burden to demonstrate pretext "by showing that the [airline's] proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." Lindsey, 447 F.3d at 1148 (internal quotation marks omitted). Indeed, a plaintiff need not necessarily introduce any additional evidence beyond that necessary to establish a prima facie case, as a factfinder may infer intentional

10

discrimination if it rejects proferred nondiscriminatory reasons as not credible. Chuang v. Univ. of California Davis, Bd. of Trustees, 225 F.3d 1115, 1127 (9th Cir. 2000).

Here, however, the record includes video evidence of much of the incident in question. That record does not unequivocally support Southwest's entire characterization of the events at issue. The video does not, for example, establish beyond reasonable dispute that Plaintiff's attire was lewd or patently offensive. There also appears to be no dispute that Plaintiff did ultimately agree to cover up after a fellow passenger offered her a T-shirt. Whether Plaintiff's interactions with Southwest employees might reflect harassment or otherwise wrongful conduct are also questions for a jury to decide.[3]

No reasonable trier of fact could conclude, however, that Southwest unreasonably determined that Plaintiff was, or might pose, a safety risk during the flight to Las Vegas. 49 U.S.C. § 44902(b) ("[A]n . . . air carrier may refuse to transport a passenger . . . the carrier decides is, or might be inimical to safety.") Video evidence shows Plaintiff repeatedly and emphatically refusing to comply with crew requests. Video evidence

---

[3] Although Southwest contends that Plaintiff's testimony is not credible, "a court's role in deciding a summary judgment motion is not to make credibility determinations or weigh conflicting evidence." Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998 (9th Cir. 2009). This Court cannot disregard Plaintiff's testimony simply because it is "self-serving." S.E.C. v. Phan, 500 F.3d 895, 909 (9th Cir. 2007); see also Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497 (9th Cir. 2015) ("Although the source of the evidence may have some bearing on its credibility and on the weight it may be given by a trier of fact, the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature.").

11

also shows Plaintiff appealing to fellow passengers to support her position against Southwest crew, including by asking the entire plane to vote on whether her attire was offensive and thus, at least implicitly, whether Plaintiff should be required to comply with crew-members' requests.  There can be no dispute that a passenger or group of passengers cannot take it upon themselves to decide whether an aircraft crew's instructions are legitimate or optional.  Given Plaintiff's incontrovertible defiance of crew-member requests and attempt to rally other passengers to join her in opposition to Southwest crew, there can be no genuine dispute that Southwest reasonably determined that Plaintiff might pose a safety risk if permitted to remain onboard.  Southwest is, therefore, entitled to summary judgment on Plaintiff's Section 1981 claim.

B.   42 U.S.C. §§ 1983 and 2000d

Plaintiff also brings claims pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 2000d.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).  Private entities are presumed not to be state actors, and plaintiffs bear the burden of demonstrating otherwise.  Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 922 (9th Cir. 2011).  "To state a claim for damages under 42 U.S.C. § 2000d, et seq., a plaintiff must allege that (1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance."  Fobbs v. Holy Cross Health Sys. Corp., 29

F.3d 1439, 1447 (9th Cir. 1994), overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131 (9th Cir. 2001).

Southwest argues that Plaintiff has adduced no evidence that Southwest is a state actor, or that it receives federal funds. Accordingly, Southwest argues, it is entitled to summary judgment on both claims. Plaintiff does not dispute that she has no evidence, but instead seeks further discovery pursuant to Federal Rule of Civil Procedure 56(d). Plaintiff has not, however, provided any explanation why the facts she seeks are not and have not been available to her. Plaintiff's request is, therefore, denied, and summary judgment is granted on these two claims. See Fed. R. Civ. P. 56(d).

    C.    State Law Claims

Lastly, Southwest contends that all of Plaintiff's state law claims are preempted by the Federal Aviation Act of 1958 ("FAA") and its implementing regulations. Specifically, as discussed above, 49 U.S.C. § 44902(b) allows an air carrier to refuse to transport and passenger who "is, or might be, inimical to safety." And, pursuant to 14 C.F.R. § 91.3(a), an aircraft pilot has final authority over aircraft operations. The Ninth Circuit has held that the "FAA preempts the entire field of aviation safety through implied field preemption. The FAA and regulations promulgated pursuant to it establish complete and thorough safety standards for air travel, which are not subject to supplementation by, or variation among, state laws." Montalvo v. Spirit Airlines, 508 F.3d 464, 468 (9th Cir. 2007); see also Ventress v. Japan Airlines, 747 F.3d 716, 722 (9th Cir. 2014) (clarifying that the while the

13

FAA preempts all safety-related state law claims, it does not necessarily affect all aviation-related claims); Keum v. Virgin Am. Inc., 781 F. Supp. 2d 944, 950 (N.D. Cal. 2011).

Plaintiff's opposition argues largely that the FAA does not preempt other federal claims. Plaintiff does not, however, address the argument that all of her state claims are preempted. Indeed, courts in this circuit have distinguished between state and federal claims, such as Section 1981 and 1983 claims. See, e.g., Mercer v. Sw. Airlines Co. ("Mercer I"), No. 13-CV-05057-MEJ, 2014 WL 4681788, at *5 (N.D. Cal. Sept. 19, 2014); Mercer v. Sw. Airlines Co. ("Mercer II"), No. 13-CV-05057-MEJ, 2014 WL 7206881, at *4 (N.D. Cal. Dec. 18, 2014). Courts, recognizing that 49 U.S.C. § 44902 "is not a license to discriminate," have allowed federal anti-discrimination claims to proceed. Mercer II, 2014 WL 7206881 at * 4 (quoting Bayaa v. United Airlines, Inc., 249 F.Supp.2d 1198, 1205 (C.D.Cal. 2002)). As the Mercer I court explained, however, with respect to state law claims, regardless "whether or not the captain was correct in his belief that Plaintiff posed a security threat, the fact that the safety of the flight was in question at the time Defendant acted is what is relevant to [the preemption] analysis." Mercer I, 2014 WL 4681788 at *5. "[B]ecause safety was the apparent basis for [Plaintiff's] removal from the flight," her state law claims are preempted, insofar as they are premised on Plaintiff's removal from the plane.

Unlike Plaintiff's other state law claims, however, Plaintiff's claim for intentional infliction of emotional distress ("IIED") is not predicated entirely on the denial of passage on the airplane. Plaintiff alleges that she was humiliated and harassed

14

even prior to her removal from the plane, and that Southwest knew that such treatment would or was likely to cause Plaintiff severe emotional distress. Thus, to the extent Plaintiff's IIED claim is based on Southwest's conduct unrelated to safety concerns, and apart from Plaintiff's removal from the plane, the claim is not preempted. See Ventress, 747 F.3d at 72; Mercer I, 2014 WL 4681788 at *5.

To prevail on her IIED claim, Plaintiff must prove "((1) outrageous conduct so extreme as to exceed all bounds of that usually tolerated in a civilized society, (2) an intention to cause or reckless disregard of the probability of causing emotional distress, (3) [P]laintiff's severe emotional suffering, and (4) actual and proximate causation of that suffering. Brown v. Allstate Ins. Co., 17 F. Supp. 2d 1134, 1139 (S.D. Cal. 1998). Southwest argues that the conduct alleged here does not rise to the level of "extreme and outrageous." (Mot at. 25) See Hughes v. Pair, 46 Cal. 4th 1035, 1051(2009) ("Liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." (internal quotation marks omitted)).

Courts may, in some cases, decide at the summary judgment stage whether alleged conduct is sufficiently "outrageous" to sustain an IIED claim. See, e.g., King v. AC & R Advert., 65 F.3d 764, 770 (9th Cir. 1995); Trerice v. Blue Cross of California, 209 Cal.App.3d 878, 883 (1989). Nevertheless, "the outrageousness of a defendant's conduct normally presents an issue of fact to be determined by the trier of fact." Trerice, 209 Cal.App.3d. at 883; Ortiz v. City of Rialto, No. EDCV161384JGBKSX, 2018 WL 11295030, at

15

*11 (C.D. Cal. Jan. 18, 2018).  To be sure, the conduct alleged here does not rise to the same level as in some other IIED cases. See, e.g., Robinson v. Hewlett-Packard Corp., 183 Cal. App. 3d 1108, 1130 (1986) (discussing employer's use of racial slurs). Given the nature of Plaintiff's allegations, however, including her traveling party's affiliation with the Black Lives Matter movement and the contemporaneous events of the summer of 2020, the determination whether Southwest's conduct, apart from the decision to remove Plaintiff from the aircraft, rose to the level of "extreme and outrageous" is best left to the jury rather than to this Court.[4]

**IV. Conclusion**

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED, in part, and DENIED, in part.  The motion is granted with respect to all claims, with the exception of Plaintiff's IIED claim.  The motion is denied with respect to the IIED claim, insofar as that claim is based upon conduct other than Southwest's decision to remove Plaintiff from the aircraft.

IT IS SO ORDERED.

Dated: May 19, 2023

DEAN D. PREGERSON
United States District Judge

---

[4] In so concluding, the court considers two competing interests: (1) the captain's unquestionable responsibility to ensure the safety of all passengers, including by removing any passenger who "might be inimical to safety", and (2) the interest of individual passengers to not be subjected to allegedly extreme and outrageous conduct.  The court finds that the proper way to reconcile these interests is to instruct the jury that as a matter of law, the captain's decision to remove Plaintiff from the aircraft was lawful, and that Plaintiff may not recover damages flowing from her removal.