1  Richard A. Lazenby (State Bar No. 202105)
   Email: rlazenby@victorrane.com
2  Natasha Mikha Pardasani (State Bar No. 270731)
   Email: npardasani@victorrane.com
3  Nicole A. Poltash (State Bar No. 323420)
   Email: npoltash@victorrane.com
4  VICTOR RANE
   9350 Wilshire Blvd., Suite 308
5  Beverly Hills, California 90212
   Telephone: (310) 388-4849
6  Facsimile: (310) 388-4869

7  Attorneys for Defendants
   SOUTHWEST AIRLINES CO.

8

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11

12  ADELENE SANDERS, an individual,        )  Case No.: 2:21-CV-00451-DDP-
                                            )  MRW
13                 Plaintiff,               )
                                            )  **DEFENDANT SOUTHWEST**
14         vs.                              )  **AIRLINES CO.'S MOTION FOR**
                                            )  **JUDGMENT AS A MATTER OF**
15  SOUTHWEST AIRLINES CO., a               )  **LAW AS TO THE ENTIRE**
    business entity of unknown form; and    )  **ACTION, PURSUANT TO**
16  DOES 1 through 100, inclusive,          )  **F.R.C.P. 50(a)**
                                            )
17  Defendants.                             )   Judge:      Dean D. Pregerson
                                            )   Courtroom:  9C
18                                          )
                                            )  [Filed concurrently with: Notice of
19                                          )  Motion; and [Proposed] Order]
                                            )
20                                          )
                                            )
21                                          )
                                            )
22                                          )
                                            )
23  _____  )

24       Defendant Southwest Airlines Co. (hereinafter, "Southwest"), by and

25  through its attorneys of record at Victor Rane, hereby submits its memorandum of

26  points and authorities in support of its Motion for Judgment as a Matter of Law as

27  to the entire action pursuant to Rule 50(a) of the Federal Rules of Civil Procedure

28  as follows:

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii-vi

I.      INTRODUCTION ................................................................ 1

II.     FACTS ............................................................................... 2

III.    LEGAL STANDARD ......................................................... 4

IV.     ARGUMENT ...................................................................... 4

    a.      Southwest is Entitled to Immunity under ATSA and/or Civil Code Section 47, not Just from Time of Removal, but for Any Prior Conduct Arising from the Disclosure of a Security Threat .............................. 4

    b.      Plaintiff Has Failed to Carry Her Burden of Establishing All the Elements of an IIED Claim ............................................... 8

        i.      *No Extreme and Outrageous Conduct with Intent or Reckless Disregard as a Matter of Law* ......................... 8

        ii.     *To the Extent Plaintiff Alleges a Scheme by Flight Attendants to Harm Her, Any Such Scheme Is Not Within the Scope of Employment* ................................ 11

        iii.    *No Severe Emotional Distress and/or Proximate Causation as a Matter of Law* ........................................ 13

    c.      CONCLUSION ................................................................ 16

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

# TABLE OF AUTHORITIES

**Federal Cases**

*Acinelli v. Torres,*
    2019 U.S. Dist. LEXIS 216929 ................................................................8, 13

*Air Wisconsin Airlines Corp. v. Hoeper*,
    571 U.S. 237, 134 S. Ct. 852, 187 L. Ed. 2d 744 (2014) ...................... 4

*Am. & Foreign Ins. Co. v. GE,*
    45 F.3d 135 (6th Cir. 1995) ....................................................... 4

*Baez v. JetBlue Airways Corp*,
    793 F.3d 269 (2d Cir. 2015) ......................................................5

*Bandary v. Delta Air Lines, Inc.,*
    2019 U.S. Dist. LEXIS 232295 ...................................................5

*Cherifi v. Select Portfolio Servicing,*
    2021 U.S. Dist. LEXIS 188931 .................................................14

*Dupree v. Apple, Inc.*
    2016 U.S. Dist. LEXIS 105117 ............................................... 12

*Edwards v. Metro. Life Ins. Co.,*
    2011 U.S. Dist. LEXIS 65028 (N.D. Cal. June 20, 2011) ...............14

*Fisher v. Nissan N. Am., Inc.,*
    951 F.3d 409, 423 (6th Cir. 2020) .............................................9

*Golden v. World Sec. Agency, Inc.*,
    884 F. Supp. 2d 675, 684 (N.D. Ill. 2012) ................................. 9

*Harsy v. Mid-American Apartment Cmtys., Inc.,*
    2017 U.S. Dist. LEXIS 97751 (E.D. Va. June 22, 2017) ............... 15

*Hussein v. JetSuiteX, Inc.*,
    2022 U.S. Dist. LEXIS 203440 ...............................................9, 13

*Ibrahim v. Dep't of Homeland Security*,
    538 F.3d 1250, 1258 (9th Cir. 2008) ........................................5

*Keeth v. Terumo Med. Corp.,*
    2012 U.S. Dist. LEXIS 11986 (W.D. Okla. Feb. 1, 2012) ..............13

*King v. Neighborhood Assistance Corp. of Am.*,
    2009 WL 10690949 (E.D. Cal. Jan. 27, 2009) ..........................9

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

*Lauter v. Anoufrieva*,
   642 F. Supp. 2d 1060 (C.D. Cal. 2009) ............................................................5

*Marlin v. Bill Rich Constr.*,
   198 W. Va. 635, 482 S.E.2d 620 (1996) .........................................................14

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs.*,
   897 F.3d 1008 (9th Cir. 2 018) ......................................................................4

*Semper v. N.Y. Methodist Hosp.*,
   786 F. Supp. 2d 566 (E.D.N.Y. 2011) ...............................................................9

**Federal Statutes**

14 C.F.R. § 121.575.....................................................................................2, 10

14 C.F.R. § 135.121.....................................................................................2, 10

14 C.F.R. § 131.803............................................................................................11

49 U.S.C. § 44941.....................................................................................4, 5, 6, 7

**State Cases**

*Angie M. v Superior Court*,
   37 Cal. App. 4th 1217, 1227 (1995) ..............................................................13

*Cochran v. Cochran*,
   65 Cal. App. 4th 488, 76 Cal. Rptr. 2d 540 (1998) ..........................................8

*Farmers Ins. Gp. v. Cnty. of Santa Clara*,
    11 Cal. 4th 992, 47 Cal. Rptr. 2d 478, 906 P.2d 440, 448 (Cal. 1995).............12

*Hagberg v. Cal. Fed. Bank*,
   32 Cal. 4th 350, 7 Cal. Rptr. 3d 803, 81 P.3d 244 (2004) ................................5

*Hughes v. Pair*,
   46 Cal. 4th 1035, 95 Cal. Rptr. 3d 636, 209 P.3d 963 (2009) .............. 10, 13, 14

*Ilczyszyn v. Sw. Airlines Co.*,
   80 Cal. App. 5th 577, 295 Cal. Rptr. 3d 533 (2022) ..................................1, 5, 6

*Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*,
   12 Cal. 4th 291, 48 Cal. Rptr. 2d 510, 907 P.2d 358 (1995) .............................12

*Perry v. Cty. of Fresno*,
   215 Cal. App. 4th 94, 155 Cal. Rptr. 3d 219 (2013) .......................................12

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Plotnik v. Meihaus*,
   208 Cal. App. 4th 1590, 146 Cal. Rptr. 3d 585 (2012) .................................... 13

*Schild v. Rubin*,
   232 Cal. App. 3d 755–763, 283 Cal. Rptr. 533 (1991) .................................... 15

**State Statutes**

Civil Code Section 47 ..............................................................................4, 5, 6, 7

**Other**

F.R.C.P., RULE 50 ..................................................................................................4

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

## I.    INTRODUCTION

Following Plaintiff's case-in-chief it is evident that, as a matter of law, Plaintiff cannot carry her burden of establishing her sole remaining claim in this matter, for Intentional Infliction of Emotional Distress ("IIED").

A recent California Appellate Court decision interpreting ATSA makes clear that Southwest is immune from liability not just from the point of removal and thereafter, but also for any prior conduct arising from disclosure to the captain of a security threat.  Specifically, the immunity attached when FA Karenev first reported the escalating safety concern to Captain Meifert, which led to a mutual decision by the two to engage a customer service supervisor, Dell Jackson, to try to resolve the situation.  *See Ilczyszyn v. Sw. Airlines Co.,* 80 Cal. App. 5th 577, 295 Cal. Rptr. 3d 533 (2022).  It is undisputed that during the remainder of the event, which involved Jackson speaking to Plaintiff, all of which is entirely on video, Plaintiff is continuously uncooperative and defiant, which led to reporting to law enforcement, and a lawful removal due to flight safety, as this Court has previously determined in its ruling on Southwest's motion for summary judgment.[1]

Additionally, IIED claims are reserved for the most despicable conduct and exceptional level of emotional distress, and the Court has a duty to avoid submitting Plaintiff's claim to the jury where it is apparent that Plaintiff's claims cannot give rise to an actionable IIED claim as a matter of law. Plaintiff's evidence does not meet the high bar of establishing any intentional conduct at the corporate level or by Southwest employees. On an IIED claim, it is not enough to establish tortious intent, criminal intent, or even intent that would be sufficient to warrant punitive damages on a different tort.

The beverage interaction between FA Karenev and Plaintiff's aunt, Shelly Phillips, cannot serve as a basis for IIED liability because it was not directed

---

[1] The Court previously held that the FA Act preempts all Southwest conduct related to "safety concerns."  (Dkt. 136, 15:4).

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

1  primarily at Plaintiff and because federal aviation regulations require airlines to

2  screen beverages for alcohol. The initial request to cover up was made on the basis

3  of a policy intended to avoid potential disruptions once the aircraft is off the

4  ground (as the "lewd, obscene and patently offensive" language is in a section of

5  Southwest's Contract of Carriage entitled "Refusal to Transport –

6  Unruly/Disruptive Passengers"). The only remaining interaction is the allegation of

7  snickering employees at check in. That interaction, even if coupled with the

8  beverage incident and request to cover up, is plainly insufficient to give rise to

9  "extreme and outrageous" conduct done with intent or reckless disregard.

10  **II.    FACTS**

11        The material facts presented by Plaintiff in her case-in-chief are:

12        (i)      At the terminal kiosk, when retrieving her boarding passes, and before

13  baggage drop, according to Plaintiff, two "Caucasian female Southwest employees

14  were acting rude and mocking and laughing and pointing at her" and these same

15  two employees greeted her as she boarded the plane;

16        (ii)     When Plaintiff and her aunt and co-traveler Shelly Phillips

17  ("Phillips") boarded the flight, they were greeted by Southwest flight attendants

18  ("FA") Elena Karenev, Chante Andrus, and Phyllis Benedict;

19        (iii)    FA Karenev approached Phillips, who was wearing a mask that read

20  "Black Lives Matter" and holding a beverage in a cup similar to the type used at a

21  nearby airport bar and had an interaction with them about whether they had been

22  drinking, which was concluded with FA Karenev smelling the cup and determining

23  that it did not contain alcohol;[2]

24        (iv)     FA Karenev, the First Officer, and two African-American passengers

25  in the front rows were "taken aback" by Plaintiff's revealing attire because

26  Plaintiff's sides, G-string underwear, and buttocks were visible; and FA Karenev

27

28  _____

[2] FA Karenev was following safety-related duties pursuant to 14 C.F.R. § 121.575 and 14 C.F.R.
§ 135.121, to confirm that Phillips was not bringing an open container of alcohol onboard.

Victor Rane
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

approached Plaintiff, who was by that time seated and asked if Plaintiff had anything to cover her attire;

(v)     Plaintiff responded that she had nothing to cover herself with and asked for a blanket. Ms. Karenev responded that there were no blankets. Plaintiff became confrontational shortly thereafter, and stated that even if she had something with which to cover up, she would not cover up, that she had the right to wear whatever she wants, and that Southwest should get sued. The video establishes that while FA Karenev tried to keep the interaction discreet, Plaintiff yelled and engaged/involved other passengers;

(vi)     Captain Meifert testified that at this stage he was informed of the incident, and that Plaintiff refused to cover up, and that "the situation was escalating and getting confrontational." (Deposition of Captain Meifert, 42:7-17; 57:25; 58:1-10; *see also* 40:18-24; 41:6-12, 23-25; 42:18-25).  Based on this information the Captain and FA Karenev mutually decided to call for the customer service supervisor to try to resolve this safety concern.  (*Id.* at 43:1-7; 44:4-8; 46:7-16).

(vii)   FA Karenev removed herself from the interaction and a Black Southwest customer service supervisor, Dell Jackson, arrived to help resolve the situation. Ms. Jackson addressed Plaintiff and inquired as to whether she had anything she could use to cover up, to which Plaintiff responded that Jackson was "harassing her with the same questions" that FA Karenev had already asked;

(viii)  Plaintiff proceeded to engage loudly with other passengers, including asking whether any other passengers had a problem with her outfit, [3] and Ms. Jackson asked her to lower her voice to which Plaintiff responded "[t]t's a blatant disrespect and harassment right now";

---

[3] The Court held that "[t]here can be no dispute that a passenger or group of passengers cannot take it upon themselves to decide whether an aircraft crew's instructions are legitimate or optional." (Dkt. 136, 12:5-8).

1    (ix)    Another passenger offered a T-shirt to Plaintiff, which Plaintiff

2 accepted before yelling "[t]rust me, this is going to be a whole situation." While no

3 witnesses recalled seeing Plaintiff cover up with the shirt, Plaintiff testified that she

4 used the shirt to cover her lap.

5    (x)    Ms. Jackson walked to the front of the aircraft and let the crew know

6 that Plaintiff had taken the shirt from the other passenger. FA Benedict stated that

7 she was not comfortable with Plaintiff and her aunt remaining on the aircraft

8 because of their disorderly behavior, including engaging the other passengers and

9 Plaintiff's aunt lifting her shirt to expose her bra after Ms. Jackson walked away.

10 The crew agreed that Plaintiff and her aunt would be removed based on their

11 behavior.

12    (xi)    Thereafter, law enforcement was called and Plaintiff and Phillips were

13 removed from the flight.[4]

14 **III.    LEGAL STANDARD**

15    A motion for judgment as a matter of law can be brought at any time prior to

16 the submission of the case to the jury.  *Motion for Judgment as a Matter of Law*

17 *(JMOL), Rutter Group Prac. Guide Fed.* Civ. Trials & Ev. Ch. 13-A; *see OTR*

18 *Wheel Eng'g, Inc. v. W. Worldwide Servs.,* 897 F.3d 1008, 1016 (9th Cir. 2 018);

19 *Am. & Foreign Ins. Co. v. GE,* 45 F.3d 135, 139 (6th Cir. 1995); Fed. R. Civ. Pro.

20 Rule 50(a).

21 **IV.    ARGUMENT**

22    **a.    Southwest is Entitled to Immunity under ATSA and/or Civil Code**
        **Section 47, not Just from Time of Removal, but for Any Prior**
23        **Conduct Arising from the Disclosure of a Security Threat**

24    Congress created the Transportation Security Administration ("TSA") in

25 2001 "to assess and manage threats against air travel." *Air Wisconsin Airlines*

26 *Corp. v. Hoeper*, 571 U.S. 237, 241, 134 S. Ct. 852, 187 L. Ed. 2d 744 (2014)

27 _____

28 [4] The Court held that "as a matter of law, the captain's decision to remove Plaintiff from the aircraft was lawful."  (*Id.* at p. 16, n. 4.)

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

DEFENDANT SOUTHWEST AIRLINES CO'S MOTION FOR
JUDGMENT AS A MATTER OF LAW
CASE NO.: 2:21-CV-00451-DDP-MRW

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

(citing ATSA, 49 U.S.C. § 44901 et seq.).  As a result of the terrorist attacks on the United States of September 11, 2001, ATSA "shifted from airlines to the TSA the responsibility for assessing and investigating possible threats to airline security." *Id.* at 248 (quotation omitted). Congress granted to airlines and their employees immunity against civil liability for reporting suspicious behavior to "ensure that the TSA would be informed of potential threats." *Id.*; 49 U.S.C. § 44941 (Immunity for reporting suspicious activities).  The Supreme Court has explained that ATSA immunity helps encourage the US Government's "when in doubt, report" policy. *See Air Wis. Airlines Corp. v. Hoeper,* 571 U.S. 237, 244 (2014).

The only exception to ATSA immunity is for "(1) any disclosure made with actual knowledge that the disclosure was false, inaccurate, or misleading; or (2) any disclosure made with reckless disregard as to the truth or falsity of that disclosure." 49 U.S.C. § 44941(b).  Courts routinely grant immunity to airlines and their employees under ATSA.  *See e.g., Ilczyszyn v. Sw. Airlines Co.,* 80 Cal. App. 5th 577, 295 Cal. Rptr. 3d 533 (2022); *Baez v. JetBlue Airways Corp,* 793 F.3d 269 (2d Cir. 2015); *Bandary v. Delta Air Lines, Inc.,* Case No. EDCV 17-1065 DSF (ASx), 2019 U.S. Dist. LEXIS 232295, 2019 WL 9244788 (C.D. Cal. Oct. 11, 2019).

Additionally, "under California law [Civil Code Section 47b], reports to police of suspected criminal activity–*even knowingly false reports to police of suspected criminal activity*—are absolutely privileged and may not serve as predicates for tort claims, except the tort of malicious prosecution." *Lauter v. Anoufrieva,* 642 F. Supp. 2d 1060, 1090 (C.D. Cal. 2009) (emphasis added) (citing *Ibrahim v. Dep't of Homeland Security*, 538 F.3d 1250, 1258 (9th Cir. 2008)); *see also Hagberg v. Cal. Fed. Bank,* 32 Cal. 4th 350, 7 Cal. Rptr. 3d 803, 81 P.3d 244, 245 (2004) (emphasis added).  In *Ibrahim v. Dep't of Homeland Sec.,* the Ninth Circuit Court of Appeals held that a phone call report by an airline employee to law enforcement about a passenger to law enforcement, which resulted in the

1  passenger's arrest, was "privileged under [California] state law [*i.e.,* C.C.P. Section
2  47] and thus cannot be the basis for tort liability."  538 F.3d 1250, 1258 (9th Cir.
3  2008) (citing *Hagberg*, 32 Cal. 4th at 364).

4          The recent decision in *Ilczyszyn v. Sw. Airlines Co.,* is particularly
5  instructive here.  80 Cal. App. 5th 577.  In that case, the crew mistook the
6  passenger's medical emergency in the lavatory as a security threat, allegedly
7  resulting in his death. The Court of Appeal affirmed the trial court's holding that
8  the airline was immune from any liability for events that occurred "<u>after the flight</u>
9  <u>attendants made their initial report to the captain of the potential security threat</u>
10 <u>posed by [the plaintiff] which formed the basis for the captain's subsequent orders</u>
11 <u>[to initiate security protocols]</u>."  *Id.* at 583.  The court in *Ilczyszyn* divided the
12 incident there into four phases:

- Phase 1 consisted of the period of time during which the flight
  attendants discovered Ilczyszyn in the bathroom and tried to assess
  his situation.
- Phase 2 <u>consisted of the period between when Captain Walker first</u>
  <u>spoke to the flight attendants and when he declared a security</u>
  <u>threat</u>.
- Phase 3 consisted of the period during which the plane was in
  "lockdown."
- Phase 4 consisted of the period after the plane landed and law
  enforcement took control of the situation.

20 *Id.* at 582-83 (emphasis added).

21         After a thorough ATSA statutory analysis, <u>the *Ilczyszyn* court held that the</u>
22 <u>airline and the crew were immune from any tort liability for conduct occurring</u>
23 <u>after phase 1</u>. The *Ilczyszyn* court held that "the trial court did not err in ruling that
24 section 44941 immunity applies not just to the disclosure of a security threat, but
25 also to conduct occurring in conjunction with the disclosure." *Id.* at 577.
26 Specifically, the appellate court affirmed the jury instructions that stated "<u>[u]nder</u>
27 <u>the law that governs this case, Southwest Airlines cannot be held liable based on</u>
28 <u>these communications between the flight attendants and Captain Walker, nor based</u>

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

1  upon the content of these communications, nor based upon the consequences that

2  followed from these communications …".  The Court of Appeal held that the

3  applicability of ATSA immunity is not limited to the point of disclosure to law

4  enforcement, and explained that the "importance of [ASTA] immunity cannot be

5  overstated" because "[a]ir carriers and their employees are ideally positioned to

6  provide timely, useful information" to law enforcement agents, and "Congress

7  intended to confer upon air carriers the greatest possible degree of protection by

8  enacting section 44941." *Id.* at 601; *see Air Wis. Airlines Corp. v. Hoeper*, 571

9  U.S. 237, 253, 134 S. Ct. 852, 865 (2014)).

10     Similarly, here, Southwest is immune from liability under ATSA and/or

11  Civil Code Section 47, not just from the point of removal and thereafter, but also

12  for *any prior conduct arising from the disclosure to the captain of a potential*

13  *security threat*.  Captain Meifert testified that he was informed of the incident and

14  that Plaintiff was refusing to cover up, and that "the situation was escalating and

15  getting confrontational." (Deposition of Captain Meifert, 42:7-17; 57:25; 58:1-10;

16  *see also* 40:18-24; 41:6-12, 23-25; 42:18-25).  Based on this information the

17  Captain and FA Karenev mutually decided to call for the customer service

18  supervisor to try to resolve this safety concern.  (*Id.* at 43:1-7; 44:4-8; 46:7-16).  It

19  is undisputed that during the remainder of the event, which involved Ms. Jackson

20  speaking to Plaintiff, all of which is entirely on video, Plaintiff is continuously

21  uncooperative and defiant, which led to reporting to law enforcement, and a lawful

22  removal due to flight safety.  Plaintiff's behavior as shown in video capturing the

23  event, when FA Karenev is speaking with Plaintiff, and continuously thereafter,

24  can be best described in the words of this Court in its summary judgment order:

25  "Given Plaintiff's incontrovertible defiance of crewmember requests and attempt

26  to rally other passengers to join her in opposition to Southwest crew, there can be

27  no genuine dispute that Southwest reasonably determined that Plaintiff might pose

28  a safety risk if permitted to remain onboard."  (Dkt. 136, 8-12.).

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

### b. Plaintiff Has Failed to Carry Her Burden of Establishing All the Elements of an IIED Claim

To establish an IIED claim, "a plaintiff must show the following three things: (1) the defendant engaged in the requisite culpable conduct (*i.e.,* 'outrageous conduct') with the requisite culpable intent (*i.e.,* intention to cause or reckless disregard of the probability of causing emotional distress); (2) the plaintiff suffered the requisite damage (severe emotional suffering); and (3) actual and proximate causation of the injury." *Acinelli v. Torres,* Case No. ED CV 13-1371-AB (PLA), 2019 U.S. Dist. LEXIS 216929, at *21 (C.D. Cal. Apr. 22, 2019) (citing *Wong v. Jing*, 189 Cal. App. 4th 1354, 1376 (Cal. App. 6 Dist. 2010)).

#### i. No Extreme and Outrageous Conduct with Intent or Reckless Disregard as a Matter of Law

In determining whether a defendant's conduct was outrageous, it is "not . . . enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 496, 76 Cal. Rptr. 2d 540, 545 (1998) (citing Rest. 2d Torts, § 46, com. d, p. 73.)  In other words, even where the misconduct is severe enough to warrant punitive damages based on other torts – it is still insufficient to establish liability for an IIED claim.  Liability is only found "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community … the tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* (citations and quotations omitted).

Alleged harassment on the basis of race, sex, or other characteristics does not typically satisfy the high threshold for "extreme and outrageous conduct" to

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

support an IIED claim. *See e.g., Golden v. World Sec. Agency, Inc.,* 884 F. Supp. 2d 675, 684 (N.D. Ill. 2012) (Not sufficiently "extreme and outrageous conduct" when a supervisor referred to an African-American employee as a monkey, sent a KKK-themed text with a depiction of a noose to another employee, and used racial slurs (including the N-word) on an almost daily basis) (applying IIED standard based on Rest. 2d Torts, § 46)). Courts have held that "[a]n allegation of discrimination based on one's characteristics as a member of a protected class alone does not suffice to allege extreme or outrageous conduct for a claim of intentional infliction of emotional distress." *King v. Neighborhood Assistance Corp. of Am.,* Case No. CV S-08-2612 LKK/EFB, 2009 WL 10690949, at *6 (E.D. Cal. Jan. 27, 2009) (citing *Washington v. Honeywell, Inc.,* 94 F.3d 654, 654 n. 1 (9th Cir. 1996) (unpublished, applying California law). While racial discrimination is "insulting and humiliating" it "does not automatically give rise to the imposition of liability for intentional infliction of emotional distress." *Fisher v. Nissan N. Am., Inc.,* 951 F.3d 409, 423 (6th Cir. 2020). "Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of [IIED] because the conduct alleged is not sufficiently outrageous." *Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566, 587 (E.D.N.Y. 2011) (citation omitted).

For example, the court in *Hussein v. JetSuiteX, Inc.* dismissed with prejudice a plaintiff's claim for IIED allegedly from an allegedly racially discriminatory denial of boarding because the alleged conduct was not "extreme and outrageous" as matter of law. Case No. 2:22-CV-00412-JAM-JDP, 2022 U.S. Dist. LEXIS 203440, 2022 WL 16806272 (E.D. Cal. Nov. 7, 2022). In that case, the airline's personnel denied boarding to Ms. Hussein due to racial profiling, and falsely accused her of being banned by the TSA and refused to contact TSA (which had no restrictions on Ms. Hussein's travel) until after she missed her flight – all of which occurred in front of other passengers causing Ms. Hussein to become so distraught

1   that she opted to drive to her destination instead of flying.  *Id.* The court held that

2   "[w]hile it is undisputed that Plaintiff faced indignity and annoyance at being

3   denied boarding and having her travel plans delayed, Plaintiff's allegations are

4   insufficient to constitute conduct that 'exceeds all bounds of that usually tolerated

5   in a civilized society' as required by the California courts." *Id.* at *4 (*Hughes v.*

6   *Pair,* 46 Cal. 4th 1035, 1050, 95 Cal. Rptr. 3d 636, 209 P.3d 963 (2009)).

7          Here, the fleeting interactions between Plaintiff and Southwest staff clearly

8   fall short of the "extreme and outrageous" done intentionally or with reckless

9   disregard of the probability of causing severe emotional distress, as matter of law,

10  even if Plaintiff showed racial discrimination, which she cannot.

11         The interaction between FA Karenev and Plaintiff's aunt, Ms. Phillips,

12  cannot serve as a basis for IIED liability because it was not "directed primarily at

13  the plaintiff." *See Christensen v. Superior Cour*t, 54 Cal. 3d 868, 904, 2 Cal. Rptr.

14  2d 79, 100, 820 P.2d 181, 202 (1991) ("The requirement that the defendant's

15  conduct be directed primarily at the plaintiff is a factor which distinguishes

16  intentional infliction of emotional distress from the negligent infliction of such

17  injury.").  Moreover, this interaction is related to a safety-concern and is therefore

18  preempted because checking beverages prevents passengers from boarding flights

19  with open containers of alcohol in violation of federal safety regulations.  *See* 14

20  C.F.R. § 121.575 and 14 C.F.R. § 135.121.

21         The request that Plaintiff cover up her revealing outfit cannot serve as the

22  basis for liability for IIED because it was safety-related and therefore preempted

23  under the Federal Aviation Act.  This brief interaction between Plaintiff and FA

24  Karenev was aimed at ensuring there would be no disturbances in the aircraft

25  during flight,[5] after FA Karenev observed the reaction of two African American

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

26
27   [5] Requesting that passengers in potentially offensive clothing cover up prior to takeoff avoids
     situations where other passengers might be offended by someone's attire, which could result in
     an in-flight disruption.  Had any passenger confronted Plaintiff about her outfit during flight, the
28   existing video footage makes clear how Plaintiff would have reacted in air.

passengers and the First Officer.

Hence, the only remaining interaction is the allegation of snickering employees at check in.  That interaction, even if coupled with the beverage incident and request to cover up, is plainly insufficient to give rise to "extreme and outrageous" conduct done with intent or reckless disregard, especially at the corporate level, and cannot, as a matter of law, give rise to any "severe emotional distress."

Plaintiff's claim that the flight attendants lied to her about no blankets onboard is simply misleading. Federal regulations clearly state that first aid and emergency medical kits are intended for the treatment of injuries, medical events, or minor accidents that might occur during the flight. 14 CFR § 131.803. The purpose of these kits is to ensure the availability of medical supplies in case of emergencies during the flight, and it is irrelevant if the blanket was an item mandated by federal law or an add-on by Southwest to enhance the medical kit.  A finding of liability for an airline employee declining to take an item from the medical kit for a non-medical use could result in a chilling effect, discouraging airlines from enhancing their medical kits beyond what is required by federal law. The Flight Attendant Manual states that the blankets are only to be used for medical emergencies. The FAs did not retrieve a blanket from the medical kit for the simple reason that there was no medical emergency, and they were complying with FAA regulations and their own Manual.

### ii.   To the Extent Plaintiff Alleges a Scheme by Flight Attendants to Harm Her, Any Such Scheme Is Not Within the Scope of Employment

Plaintiff's IIED claim depends in its entirety on respondeat superior. As an employer, Southwest is not liable as a matter of law for any purported "personal scheme" by its employees to discriminate against, or otherwise harass Plaintiff, because such personal scheme would not be within the scope of their employment

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

1    with Southwest and Plaintiff presented no evidence that Southwest authorized or

2    ratified any such scheme.

3         The court in *Dupree v. Apple, Inc.* explained that if an employee inflicts an

4    injury out of personal malice that is not an outgrowth of the employment, it is

5    outside the scope of employment and cannot be attributed to the employer under

6    the doctrine of respondeat superior.  Case No. 16-CV-00289-LHK, 2016 U.S. Dist.

7    LEXIS 105117, at *27-8 (N.D. Cal. Aug. 9, 2016) (citing *Farmers Ins. Gp. v.*

8    *Cnty. of Santa Clara*, 11 Cal. 4th 992, 47 Cal. Rptr. 2d 478, 906 P.2d 440, 448

9    (Cal. 1995)).  California courts have determined that "[i]f the main purpose of the

10   injury-producing activity was the pursuit of the employee's personal ends, the

11   employer is not liable." *Id.* at *28-9.  (citing *Sunderland v. Lockheed Martin*

12   *Aeronautical Sys. Support Co.*, 130 Cal. App. 4th 1, 29 Cal. Rptr. 3d 665, 672 (Ct.

13   App. 2005) (emphasis added)).  A

14        Even where the circumstances of employment facilitates the tortious

15   conduct, respondeat superior requires more than "but for" causation and an

16   employer will not be liable unless the employees' "motivating emotions were fairly

17   attributable to work-related events or conditions." *Lisa M. v. Henry Mayo Newhall*

18   *Mem'l Hosp.,* 12 Cal. 4th 291, 301, 48 Cal. Rptr. 2d 510, 516, 907 P.2d 358, 364

19   (1995) (emphasis added); *Jasso v. Cty. of L.A.,* Case No. CV 14-09110-MWF

20   (VBKx), 2015 U.S. Dist. LEXIS 200687, at *36 (C.D. Cal. Oct. 13, 2015); *Perry v.*

21   *Cty. of Fresno*, 215 Cal. App. 4th 94, 102, 155 Cal. Rptr. 3d 219, 224 (2013) ("[a]n

22   employee who abuses job-created authority over others for purely personal reasons

23   is not acting within the scope of employment."). Here, Plaintiff appears to allege a

24   scheme by Southwest employees to discriminate against and/or harass Plaintiff but

25   there is no evidence that any such scheme resulted from "motivating emotions"

26   that "were fairly attributable to work-related events or condition." Even if

27   Southwest employees abused their position, this is insufficient as a matter of law to

28   impute liability to Southwest under respondeat superior.

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

In sum, it is evident that Plaintiff cannot show "extreme and outrageous" conduct done with intent or reckless disregard, especially at the corporate level, and therefore, Southwest is entitled to a judgment as a matter of law.

### iii. No Severe Emotional Distress and/or Proximate Causation as a Matter of Law

The Supreme Court has set a "high bar" "[w]ith respect to the requirement that a plaintiff show severe emotional distress." *Hughes v. Pair*, 46 Cal. 4th 1035, 1051, 95 Cal. Rptr. 3d 636, 651, 209 P.3d 963, 976 (2009). The plaintiff has the burden of establishing the "nature, extent or duration of her alleged emotional distress" (*Angie M. v Superior Court*, 37 C.A.4th 1217, 1227 (1995)) and the emotional distress must be "of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Acinelli v. Torres*, Case No. ED CV 13-1371-AB (PLA), 2019 U.S. LEXIS 216929, at *22-23 (C.D. Cal. Apr. 22, 2019) (*citing Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1265, 217 Cal. Rptr. 3d 234 (Cal. App. 2 Dist. 2017)).

California law provides, specifically, that "the court determines whether, on the evidence, severe emotional distress can be found; the jury determines whether, on the evidence, it has in fact existed." *Acinelli,* 2019 U.S. Dist. LEXIS 216929, at *23 (*citing Fletcher v. Western Nat. Life Ins. Co.,* 10 Cal. App. 3d 376, 89 Cal Rptr. 78 (Cal. App. 4 Dist. 1970)); *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1614, 146 Cal. Rptr. 3d 585, 605-06 (2012). The Court serves an important role, as a gatekeeper, to ensure that claims that fall short of the demanding threshold for IIED are disposed before submission to the jury. *See Keeth v. Terumo Med. Corp.,* Case No. CIV-11-828-C, 2012 U.S. Dist. LEXIS 11986, at *2-3 (W.D. Okla. Feb. 1, 2012) ("the Court acts as a gatekeeper, making an initial determination about the validity of Plaintiff's claim before sending it to the jury.").

In a similar case involving allegations of "humiliation" caused by airline employees, which is discussed above, the court in *Hussein v. JetSuiteX, Inc.*

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

1  dismissed with prejudice a plaintiff's claim for IIED for lack of "severe emotional

2  distress" arising from an allegedly racially discriminatory denial of boarding. Case

3  No. 2:22-CV-00412-JAM-JDP, 2022 U.S. Dist. LEXIS 203440, 2022 WL

4  16806272 (E.D. Cal. Nov. 7, 2022). The court held Ms. Hussein could not

5  establish that she sustained "severe emotional distress" as a matter of law, and

6  dismissed her IIED claims with prejudice. *Id.* at *5. "Plaintiff's alleged injuries

7  were transitory and do not meet the high bar of substantial or enduring injury as

8  required by the California courts." *Id.* (*citing Girard v. Ball*, 125 Cal. App. 3d 772,

9  787, 178 Cal. Rptr. 406 (Ct. App. 1981); *Hughes*, 46 Cal. at 1051.

10     "[S]ufficiently severe emotional distress usually manifests itself in physical

11  or other observable ways, like chronic vomiting, loss of bladder function, or

12  inability to work." *Cherifi v. Select Portfolio Servicing,* Case No. 8:21-CV-00001-

13  DOC-(KESx), 2021 U.S. Dist. LEXIS 188931, at *10 (C.D. Cal. July 30, 2021)

14  (citing *Hailey v. California Physicians' Serv.,* 158 Cal. App. 4th 452, 476, 69 Cal.

15  Rptr. 3d 789 (2007); *Maynard v. United Servs.,* Case No. 21-cv-04519-JSW, 2022

16  U.S. Dist. LEXIS 163123, at *12 (N.D. Cal. Sep. 9, 2022) (holding <u>not</u> "severe

17  emotional distress" as a matter of law: "panic attacks and migraines, feeling

18  helpless and powerless, humiliat[ion], suffering [from] tachycardic episodes,

19  severe increase in stress and metanephrines, anxiety, multiple visits to the ER, and

20  addition of new anxiety relieving prescriptions.").

21     This is not a situation where a "reasonable [person], normally constituted

22  would be unable to adequately cope with the mental stress engendered by the

23  circumstances of the case," and therefore no severe emotional distress can be found

24  as a matter of law.[6] *Edwards,* 2011 U.S. Dist. LEXIS 65028, at *13 (citing

25  ───────────────────────

26  [6] It is anticipated that Plaintiff will argue an "eggshell psyche" theory, however, it is inapplicable to IIED claims. *See e.g., Marlin v. Bill Rich Constr.,* 198 W. Va. 635, 653, 482 S.E.2d 620, 638 (1996) ("[A] reasonable person, normally

27  constituted … in this context [of IIED], has been found to be an ordinarily sensitive person and <u>not the supersensitive, 'eggshell psyche' plaintiff</u>.") (*emphasis

28  added*).  Also, whether "severe emotional distress" can be found is a question of

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849

*Molien,* 27 Cal. 3d at 927-28; *Whiting v. Dep't of the Cal. Highway Patrol*, Case No. EDCV 18-2652-CAS (JEM), 2020 U.S. Dist. LEXIS 46091, at *41 (C.D. Cal. Jan. 23, 2020) (citing *Wong v. Jing,* 189 Cal. App. 4th 1354, 1377-78, 117 Cal. Rptr. 3d 747 (2010)).  Plaintiff should not be permitted to submit her IIED claim to the jury, as the Court's gatekeeping function is intended to enforce the high bar set by the California Supreme Court for IIED claims.

Moreover, there is no evidence that the incident involving Southwest employees was a substantial factor in causing any of Plaintiff's alleged emotional distress. Plaintiff's treating providers, Dr. Tracey Shepherd and Nurse Practitioner Aizzel Trieu, testified that they took her self-reported symptoms to be true, and merely relied on her assertion that the incident caused her symptoms. There is no competent and/or admissible evidence that Plaintiff was diagnosed with PTSD, dysmorphia or any other mental health disorder <u>as a result of</u> the above interactions with Southwest employees, or that the incident otherwise had any significant long-term impact on her life.  And, to the extent Plaintiff sustained any "humiliation" or "distress" from the very brief interaction in which FA Karenev asked her to cover up, Plaintiff caused herself such distress by loudly conveying to passengers nearby what was being asked of her.

In sum, Plaintiff has failed to carry her burden of establishing that the subject incident was a substantial factor in causing her to sustain "severe emotional distress" *i.e.,* "highly unpleasant mental suffering or anguish from socially unacceptable conduct that entails such intense, enduring, and nontrivial emotional distress that no reasonable person in a civilized society should be expected to endure its distress." *Schild v. Rubin*, 232 Cal. App. 3d 755, 762–763, 283 Cal.

---

liability and not damages, and therefore the "eggshell" plaintiff theory is irrelevant. *Harsy v. Mid-American Apartment Cmtys., Inc.,* Case No. 1:17-cv-87, 2017 U.S. Dist. LEXIS 97751, at *8-9 (E.D. Va. June 22, 2017)  ("[I]n order for Plaintiff to benefit from the 'eggshell rule,' he must satisfy all other elements of the causes of action that he asserts.").

Rptr. 533(1991).

## V.   CONCLUSION

For the foregoing reasons, Southwest respectfully requests that the Court grant this motion in its entirety.

Dated: June 28, 2023                         Respectfully submitted,

                                             By: _____
                                             Richard A. Lazenby
                                             Natasha Mikha Pardasani
                                             Nicole A. Poltash
                                             VICTOR RANE
                                             Attorneys for Defendant
                                             SOUTHWEST AIRLINES CO.

VICTOR RANE
9350 Wilshire Blvd., Suite 308
Beverly Hills, California 90212
Telephone: (310) 388-4849